# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| VIASAT, INC., *Plaintiff*, v. WESTERN DIGITAL CORPORATION and WESTERN DIGITAL TECHNOLOGIES, INC., *Defendants*. | Case No. 6:21-cv-01230-ADA<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' FED. R. CIV. P. 12(b)(3) AND 12(b)(6) MOTION TO DISMISS**

On November 29, 2021, Plaintiff Viasat, Inc. ("Viasat") filed a Complaint against Defendants Western Digital Corporation ("WDC") and Western Digital Technologies, Inc. ("WDT") (together, "Defendants") alleging infringement of two patents.  D.I. 1 ("Compl.").[1] Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), WDC respectfully moves to dismiss the Complaint for improper venue.  Further, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss Viasat's indirect infringement claims for failure to state a claim.

## I. CERTIFICATION OF COMPLIANCE WITH OGP 4.0, PART VI

Defendants certify that they have complied with Part VI of the Standing Order March 7, 2022 Standing Order Governing Proceedings (OGP) 4.0—Patent Cases ("OGP 4.0").[2]  The parties have stipulated to dismissal of Viasat's pre-suit indirect infringement allegations under the terms of Part VI of the OGP 4.0,[3] but were not able to come to agreement as to Viasat's post-suit indirect infringement allegations.

## II. INTRODUCTION

WDC respectfully requests dismissal of Viasat's claims against it for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).  WDC is not incorporated in Texas, nor does it have any place of business in the State of Texas, much less in the Western District of Texas.[4]  Viasat's claims against WDC should be dismissed.

---

[1] On December 29, 2021, the parties agreed to extend the date for Defendants to respond to Viasat's Complaint to April 1, 2022.  D.I. 21.

[2] The OGP 4.0 was entered into the present action on March 10, 2022. *See* Mar. 10, 2022 Text Order.

[3] *See* D.I. 34.

[4] That WDT does not move to dismiss under Rule 12(b)(3), Fed. R. Civ. P., is in no way intended to be an admission that the Western District of Texas is a proper venue for this case as to WDT.

1

Defendants together request dismissal under Federal Rule of Civil Procedure 12(b)(6) of Viasat's indirect infringement claims. Such claims are threadbare, are vague as to even the type of indirect infringement claimed, and do not plead the bare minimum of what is required under Supreme Court and Federal Circuit precedent. Viasat's allegations fail to establish a claim for induced infringement because the Complaint does not allege the requisite specific intent. Viasat's allegations also fail to establish a claim for contributory infringement because the Complaint fails to identify any component that forms the basis for the claim. Viasat's indirect infringement claims should be dismissed.

### III.   RELEVANT BACKGROUND

WDC is incorporated in the State of Delaware. Declaration of John Lencioni in Support of Defendants' Fed. R. Civ. P. 12(b)(3) and 12(b)(6) Motion to Dismiss ¶ 3 & Ex. A ("Lencioni Decl."). WDC's corporate headquarters are located in San Jose, California. *Id*. WDC does not have any offices or facilities—leased or owned—in the entire State of Texas. *Id*. ¶ 4. Similarly, WDC does not employ any individual in the State of Texas. *Id*. ¶ 5.

Viasat has accused a variety of flash products of infringing U.S. Patent No. 8,615,700 (the "'700 patent") and U.S. Patent No. 8,966,347 (the "'347 patent") (together, the "Asserted Patents"). Specifically, Viasat alleges that Defendants "directly and indirectly" infringe the Asserted Patents "by making, using, offering for sale, or selling in the United States . . . Western Digital's NAND-flash-memory-containing products" "that implement the [Asserted Patents'] error correction architecture" such as those "sold under the brand names Western Digital, G-

---

Further, Defendants reserve the right to move to transfer under 28 U.S.C. § 1404 within the timeframe permitted by the Court's schedule and applicable standing orders.

Technology, SanDisk, Ultrastar, WD, Cloudspeed, iNAND, and OpenFlex" (collectively, the "Accused Products").[5]  Compl. ¶¶ 8–9.

## IV. VENUE AS TO WDC IS NOT PROPER IN THE WESTERN DISTRICT OF TEXAS

The case against WDC should not have been brought in the Western District of Texas—or in Texas at all.  If a case is filed in an improper venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Dismissal is appropriate where, as here, "venue is 'wrong.'"  *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013); *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1290 (Fed. Cir. 2021) (affirming dismissal for improper venue under 28 U.S.C. § 1406(a)).  The Court must consider whether venue is proper with respect to each defendant.  28 U.S.C. § 1400(b); *Magnacoustics, Inc. v. Resonance Tech. Co.*, No. 97–1247, 1997 WL 592863, at *1 (Fed. Cir. Sept. 25, 1997) ("[A]s firmly established by judicial decisions, in an action involving multiple defendants, venue and jurisdiction requirements must be met as to each defendant.") (citing 17 Moore's Fed. Practice 3d § 111.12[4][b]).

In a patent case, venue lies only "[1] in the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1518-19 (2017) (citation omitted).  Viasat bears the burden of establishing proper venue. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018) ("[U]pon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue."). Viasat cannot meet its burden of establishing proper venue over WDC in this District under either prong of Section 1400(b).

---

[5] Importantly, WDC has not sold any of the Accused Products.  Lencioni Decl. at ¶ 7.

### A. WDC Does Not Reside In This District

A domestic corporate defendant, like WDC, "resides" only in its state of incorporation. *TC Heartland*, 137 S. Ct. at 1521. Viasat admits that WDC is a Delaware corporation. Compl. ¶ 14; *see also* Lencioni Decl. ¶ 3 & Ex. A. Thus, WDC's residence is not a basis for venue in this District.

### B. WDC Does Not Have a Place of Business In This District

The Federal Circuit set forth three factors that must be satisfied for a defendant to have a regular and established place of business in a district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Andra*, 6 F.4th at 1287 (quoting *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017)) (internal citations omitted). "[T]he Supreme Court has cautioned against a broad reading of the venue statute." *Id.* (citing *Cray*, 871 F.3d at 1361; *In re Google LLC*, 949 F.3d 1338, 1346 (Fed. Cir. 2020)).

None of these factors are satisfied. WDC does not own, lease, or operate its business at a location in this District or in the State of Texas. *See* Lencioni Decl. ¶¶ 4-5. Indeed, WDC does not have any employees that reside in this District or the State of Texas. *See id.* ¶ 5. Viasat's purported basis for venue is that WDC "[e]ither directly or through its subsidiaries" has a place of business in Austin, Texas. Compl. ¶ 15. That office has never been owned or leased by WDC— in fact, Viasat identifies the same address as a place of business for WDT. *See* Lencioni Decl. ¶¶ 4, 6; Compl. ¶¶ 14–15.

As such, venue is improper, and WDC should be dismissed. *See In re ZTE*, 890 F.3d at 1013 ("If **any** statutory requirement is not satisfied, venue is improper under § 1400(b).") (emphasis added); *see also, e.g.*, *TMT Sys., Inc. v. Medtronic, Inc.*, No. 6:20-CV-00973-ADA, 2021 WL 5316411, at *5 (W.D. Tex. Oct. 19, 2021) (dismissing for lack of venue under § 1400(b)

4

despite the defendant requiring over 50 of its employees to work at an affiliate's facility located in the district because such facility was not the defendant's place of business); *LoganTree LP v. Garmin Int'l, Inc.*, No. 17-cv-00098-FB, 2017 WL 2842870, at *1–2 (W.D. Tex. June 22, 2017) (dismissing for lack of venue under § 1400(b) despite defendant's allegedly infringing sales in Texas because defendant did not have a physical location in Texas); *Realtime Data LLC v. Acronis, Inc.*, No. 17-cv-118-RWS-JDL, 2017 WL 3276385, at *1 (E.D. Tex. July 14, 2017), *report and recommendation adopted*, No. 6:17-CV-118 RWS-JDL, 2017 WL 3267942 (E.D. Tex. Aug. 1, 2017) (dismissing complaint for improper venue under § 1400(b) in part because defendant "d[id] not own, lease, or rent any office space in Texas").

Further, venue cannot be imputed to a defendant based on a related entity's alleged "place of business" in the forum. "[W]here related companies have maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes." *Andra*, 6 F.4th at 1289 (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3823 & nn.25–26 (4th ed.)); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983) ("[S]o long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other.") (citing *Cannon*); *Nat'l Steel Car Ltd. v. Greenbrier Cos., Inc.*, No. 6:19-cv-00721-ADA, 2020 WL 4289388, at *2 (W.D. Tex. July 27, 2020) ("Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent.") (quoting *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 Fed. Appx. 326, 331 (5th Cir. 2011)); *Interactive ToyBox, LLC v. Walt Disney Co.*, No. 1:17-cv-1137-RP, 2018 WL 5284625, at *3 (W.D. Tex. Oct. 24, 2018) ("Except where corporate formalities are ignored and an alter ego relationship exists,

5

the presence of a corporate relative in the district does not establish venue over another separate and distinct corporate relative.") (quoting *Bd. of Regents v. Medtronic PLC*, No. A-17-CV-0942-LY, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018)); *see also Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 82 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("Settled law always presumes that corporations exist as separate entities."); *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-CV-00293-RWS-RSP, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017), *report and recommendation adopted*, No. 2:17-CV-00293-RWS, 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017) ("[E]ven if a parent corporation controls a subsidiary's operations and the companies share a unitary business purpose, the subsidiary's presence in a venue cannot be imputed to the parent absent disregard for corporate separateness.").

Viasat cannot meet its heavy burden to impute WDT's contacts to WDC.  *See Nat'l Steel*, 2020 WL 4289388, at *2.  There is no evidence that the relationship between WDC and WDT is anything other than a parent-subsidiary relationship.  *See* Lencioni Decl. ¶¶ 8–10.[6]  Nothing suggests otherwise and Viasat certainly has not pointed to anything.  *See generally* Compl.

In fact, Viasat does not even make conclusory allegations that would support that venue is proper in this District as to WDC.  *See generally* Compl.  This is because it cannot.  WDC and WDT are separate corporate entities and observe corporate formalities.  Lencioni Decl. ¶ 8.  For example, WDC and WDT have completely separate Boards of Directors, share no common Board members, and further maintain separate minute books and separate general ledgers, and have separate bylaws.  *Id.*  WDC and WDT are also financially and operationally separate.  WDC and

---

[6] When considering a venue motion under Federal Rule of Civil Procedure 12(b)(3), "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (internal quotation marks and citation omitted).

WDT maintain separate bank accounts, separate accounting systems, and separate payrolls.  *Id.* ¶ 9.  WDC also does not pay the salaries of WDT employees or other WDT operating expenses. *Id.*  WDT's product revenue is independent of WDC and, in fact, the vast majority of WDT's total revenue is independent of WDC.  *Id.*  WDT funds its day-to-day operations through the sale of its products.  *Id.*  WDT also has significant control over its day-to-day operating decisions, including hiring and firing employees and purchasing or leasing office space–including in this District and the State of Texas.  *Id.* ¶ 10.  Finally, WDT has significant control over its products, including research and development, manufacturing, and sales.  *Id.*  Accordingly, venue is improper in this District as to WDC, and WDC respectfully requests that the Court dismiss Viasat's claims against it for improper venue.

## V.     VIASAT'S ALLEGATIONS OF POST-SUIT INDIRECT INFRINGEMENT FAIL AS A MATTER OF LAW

Federal Rule of Civil Procedure 8 requires Viasat to give Defendants "fair notice of what the claim is and the grounds on which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and alteration omitted).  This notice "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Viasat must plead "enough facts to state a claim to relief that is plausible on its face," *id.* at 570, and show "more than a sheer possibility that [Defendants have] acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Viasat's Complaint fails to give Defendants fair notice of what its claims for post-suit indirect patent infringement are, let alone the factual grounds on which such claims rest.  Viasat requests "judgment in favor of Viasat that [Defendants have] infringed one or more claims of the [Asserted Patents], directly and indirectly, literally or under the doctrine of equivalents[.]"  Compl.

at 31 (Prayer for Relief, ¶ A). However, the only allegations in Viasat's Complaint that appear even minimally relevant to indirect infringement are as follows:

1. "Western Digital has infringed and is still infringing the '700 and '347 patents, directly and indirectly, by making, using, offering for sale or selling in the United States, including in this District, certain products that implement the patents' error-correction architecture." Compl. ¶ 8.

2. "Western Digital makes, uses, sells, offers to sell, imports, or otherwise distributes and supports the Accused Products in the United States." Compl. ¶ 46.

3. "Western Digital also manufactures Accused Products outside of the United States and sells them to third parties with the knowledge that the Accused Products will be imported for use in the United States." Compl. ¶ 47.

Such vague allegations not only fail to specify whether Viasat is stating a claim for induced or contributory infringement but fail to include sufficient detail to move beyond the "formulaic recitation of the elements of a cause of action" that the Supreme Court has found insufficient. *See Twombly*, 550 U.S. at 555. Viasat's post-suit indirect infringement allegations should be dismissed.

### A. Viasat Fails To State A Claim For Post-Suit Induced Infringement

To plead inducement, a patentee must plausibly plead facts that the accused infringer: (1) induced an underlying direct infringement; (2) had knowledge of the patent-in-suit; (3) possessed specific intent to encourage another's infringement; and (4) took active steps to encourage another's infringement. *Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. W:13-CV-362, 2014 WL 12551207, at *2 (W.D. Tex. Apr. 30, 2014). "[M]ere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement" are also required. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009).

Viasat's allegations as to post-suit induced infringement are insufficient as a matter of law because Viasat does not plead any facts—let alone plausibly allege—Defendants' specific intent

8

to induce (element (3)) or active steps to encourage another's infringement (element (4)) as to the '700 or the '347 patent. Viasat's Complaint does not even specify which patent Defendants are accused of indirectly infringing. *See generally* Compl. Such conclusory assertions—bereft of any factual support—are insufficient. *Affinity Labs of Texas*, 2014 WL 12551207, at *5 (rejecting similar barebones allegations and noting that "such unsubstantiated assertions do not adequately support the more demanding specific intent requirement for a finding of induced infringement"); *Inhale, Inc. v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) (dismissing claim for induced infringement where "the complaint contains no allegation that [accused infringer] specifically intended another party to infringe the patent and knew of that other party's infringement"). As such, Viasat's allegations as to post-suit induced infringement is insufficient as a matter of law and should be dismissed.

      **B.**      **Viasat Fails To State A Claim For Post-Suit Contributory Infringement**

Under 35 U.S.C. § 271(c), to state a claim for contributory infringement, Viasat must plausibly plead facts supporting each of the following four elements: (1) direct infringement, (2) that WDT had knowledge of the patents, (3) that the component has no substantial non-infringing uses, *and* (4) that the component is a material part of the invention and specifically adapted for infringement. *See In re Bill of Lading*, 681 F.3d 1323, 1336–37 (Fed. Cir. 2012); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009); *see also Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17-cv-00143-RP-JCM, 2017 WL 9477677, at *6–7 (W.D. Tex. Nov. 28, 2017) (dismissing claim for contributory infringement where "plaintiff plead general allegations and failed to identify the specific [components of the accused product] that was infringing and how those components were material and specifically adapted for infringement."). Failure to plausibly plead facts supporting any element warrants dismissal. *See, e.g.*, *Bill of Lading*, 681 F.3d at 1337 ("To state a claim for contributory infringement, therefore, a plaintiff must, among other things,

9

plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.").

Viasat's Complaint fails to state a claim for post-suit contributory infringement for three independent reasons. First, as noted above, Viasat's Complaint does not even specify which patent Defendants are accused of indirectly infringing. Second, the Complaint does not plead any facts—let alone plausibly allege—that any identified component has no substantial non-infringing use (element (3)) as to the '700 or the '347 patent. Third, the Complaint similarly does not plead any facts—let alone plausibly allege—that any identified components of the accused products constitute a material part of the invention or were specifically adapted for infringement (element (4)) as to the '700 or the '347 patent.

Accordingly, Viasat's allegations as to post-suit contributory infringement fails as a matter of law and should be dismissed.

## VI. CONCLUSION

For the reasons set forth above, Defendants respectfully requests the Court dismiss Viasat's allegations as to post-suit indirect infringement. WDC also respectfully requests that the Court dismiss this action as to WDC for improper venue. Pursuant to Local Rule CV-7(g), Defendants also request an oral hearing on this motion.

Dated: April 1, 2022

Respectfully submitted,

/s/ *L. Kieran Kieckhefer*
L. Kieran Kieckhefer (*pro hac vice*)
Shearman & Sterling LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415.616.1124
Facsimile: 415.616.1199
Kieran.Kieckhefer@Shearman.com

David P. Whittlesey
Shearman & Sterling LLP
300 West 6th Street, 22nd Floor
Austin, Texas 78701
Telephone: 512.647.1907
Facsimile: 512.857.6602
David.Whittlesey@Shearman.com

Matthew G. Berkowitz (*pro hac vice*)
Patrick R. Colsher (*pro hac vice*)
Yue (Joy) Wang (*pro hac vice*)
Shearman & Sterling LLP
1460 El Camino Real, 2nd Floor
Menlo Park, CA 94025
Telephone: 650.838.3600
Facsimile: 650.838.5141
Matt.Berkowitz@Shearman.com
Patrick.Colsher@Shearman.com
Joy.Wang@Shearman.com

Ahmed E. ElDessouki (*pro hac vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Telephone: 212-838-4000
Facsimile: 646-848-4908
Ahmed.ElDessouki@Shearman.com

*Counsel for Defendants Western Digital Corporation and Western Digital Techs., Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 1, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF.

/s/ *Shiina Akasaka*
Shiina Akasaka
Litigation Legal Assistant Case Manager
