**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |
|---|---|
| VIASAT, INC., | |
| *Plaintiff*, | |
| v. | Case No. 6:21-cv-01230-ADA |
| WESTERN DIGITAL CORPORATION and WESTERN DIGITAL TECHNOLOGIES, INC., | **ORAL ARGUMENT REQUESTED** |
| *Defendants*. | **PUBLIC VERSION** |

**WESTERN DIGITAL TECHNOLOGIES, INC.'S[1] OPPOSED MOTION FOR TRANSFER**

---

[1] The parties have stipulated to the dismissal of defendant Western Digital Corporation.  *See* D.I. 46, 48.

# TABLE OF CONTENTS

I.      Introduction ................................................................................................................1

II.     Background ................................................................................................................1

        A.      WDT's Knowledgeable Witnesses and Documents Are In NDCA or Israel ..........1

        B.      Viasat Is Headquartered In San Diego, California, And Has An NDCA Office .....4

        C.      All Third-Party Witnesses Are Located Outside Of WDTX .................................6

III.    This Court Should Transfer This Action to NDCA For The Convenience of the Parties
        ................................................................................................................................7

        A.      Venue Is Proper In The Northern District of California ..........................................8

        B.      The Private Interest Factors Favor Transfer ...........................................................8

                1.      The *Access to Sources of Proof* Factor Favors Transfer.............................8

                2.      The *Availability of Compulsory Process* Factor Favors Transfer................9

                3.      The *Convenience of the Witnesses and Parties* Factor Favors Transfer....10

                4.      The *Practical Problems* Factor Favors Transfer ......................................13

        C.      The Public Interest Factors Favor Transfer ..........................................................14

                1.      The *Court Congestion* Factor Is Neutral..................................................14

                2.      The *Local Interest* Factor Favors Transfer ...............................................16

                3.      The *Familiarity with the Law* Factor is Neutral........................................18

                4.      The *Conflict of Laws* Factor is Neutral ....................................................18

IV.     Conclusion ...............................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*In re Acer Am. Corp.*, 626 F.3d 1252 (Fed. Cir. 2010).........................................................8, 9, 16

*In re Adobe*, *Inc.,* 823 Fed. Appx. 929 (Fed. Cir. 2020).........................................................10, 12

*Aguilar-Ayala v. Ruiz*, 973 F.2d 411 (5th Cir. 1992)....................................................................10

*In re Apple, Inc.*, 979 F.3d 1332 (Fed. Cir. 2020) ...........................................................8, 15, 16

*In re Apple, Inc.*, 581 Fed. Appx. 886 (Fed. Cir. 2014)................................................................10

*In re Atlassian Corp. PLC*, No. 2021-177,
    2021 WL 5292268 (Fed. Cir. Nov. 15, 2021)..................................................................13, 15

*Camatic Proprietary Ltd. v. Irwin Seating Co.*, No. 3:16-CV-0795-M,
    2017 WL 2362029 (N.D. Tex. May 31, 2017) ..........................................................10, 17, 18

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009)........................................................8, 10, 15

*In re Google, LLC*, No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021)............10, 12, 13

*Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*, No. 6:19-CV-00355-ADA,
    2020 WL 6136783 (W.D. Tex. Mar. 30, 2020) ...........................................................10

*In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) .............................................16, 17

*In re HP Inc.*, 826 Fed. Appx. 899 (Fed. Cir. 2020)........................................................7, 13, 16

*J.R. Simplot Co. v. McCain Foods USA, Inc.*, No. 1:16-cv-00449-DCN,
    2017 WL 5192223 (D. Idaho Nov. 09, 2017)...........................................................14

*In re Juniper Networks, Inc.*, 14 F.4th 1313 (Fed. Cir. 2021) .................................................10, 18

*LBT IP II LLC v. Uber Techs., Inc.*, No. 6:21-CV-1210-ADA,
    2022 WL 2541355 (W.D. Tex. July 6, 2022) ..........................................................8

*Moskowitz Fam. LLC. v. Globus Med., Inc.*, No. 6:19-CV-00672-ADA,
    2020 WL 4577710 (W.D. Tex. July 2, 2020) .....................................................9, 10

*In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022).......................15, 16

*In re Pandora Media, LLC*, No. 2021-172,
    2021 WL 4772805 (Fed. Cir. Oct. 13, 2021)...........................................................12

*In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) ............................................................8

*In re Samsung Elecs. Co.*, 2 F.4th 1371 (Fed. Cir. 2021) ..............................9, 13, 14, 17

*In re TOA Techs., Inc.*, 543 Fed. Appx. 1006 (Fed. Cir. 2013) ...............................8, 17

*Uniloc USA, Inc. v. Blackboard, Inc.*, No. A-17-cv-00753,
    2020 WL 4578702 (W.D. Tex. May 15, 2020) ..............................................................9

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (*en banc*)............................. *passim*

*Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-cv-141-LY,
    2017 WL 4547916 (W.D. Tex. Oct. 11, 2017) ..........................................................12

**Statutes**

28 U.S.C. § 1400(b) ...........................................................................................................8

**Rules**

Fed. R. Civ. P. 42(a) .......................................................................................................14

Pursuant to 28 U.S.C. § 1404(a), Defendant Western Digital Technologies, Inc. ("WDT") respectfully moves to transfer this action to the United States District Court for the Northern District of California ("NDCA") "[f]or the convenience of parties and witnesses."

## I.  INTRODUCTION

This case should be transferred to NDCA.  WDT is headquartered in NDCA; Plaintiff Viasat, Inc. ("Viasat") is headquartered in San Diego, California, with a significant presence (and office) in NDCA.   Viasat accused certain NAND-flash-memory-containing-products that implement Western Digital's Sentinel ECC&DSP technology[2] ("the Accused Functionality") of infringing the Asserted Patents.[3]   The technology claimed in the Asserted Patents was not developed in this District, nor was the Accused Functionality designed or manufactured in this District.  WDT's relevant documents did not originate here, nor are they stored here.  The relevant witnesses do not reside here.  The vast majority—if not all—of the U.S.-based sources of proof are in NDCA.   Further, while WDT and Viasat each have a presence in this District, each company's presence is completely unrelated to the facts of this case.

## II.  BACKGROUND

### A.  WDT's Knowledgeable Witnesses and Documents Are In NDCA or Israel

WDT is incorporated in the State of Delaware.  Declaration of David Carter In Support of WDT's Opposed Motion for Transfer ("Carter Decl.") ¶ 3.  WDT's headquarters is located in San Jose, California (*i.e.*, NDCA), and WDT and its affiliates have a significant presence throughout the San Francisco Bay Area.  *Id.* ¶¶ 3-4.  WDT does not own any real property in the State of

---

[2] Hereinafter referred to as the "Sentinel Technology."

[3] The Asserted Patents are U.S. Patent Nos. 8,615,700 (the "'700 patent") and 8,966,347 (the "'347 patent") and relate to "forward error correction (FEC) in general and, in particular, FEC for flash memory." '700 patent at 1:16-17; '347 patent at 1:20-21.

Texas.[4]  *Id.* ¶¶ 6-7.  WDT leases one office in Austin, which hosts a small number of employees who have no access to the documents relevant to this litigation and no unique knowledge relevant to the allegations in this litigation that cannot also be provided by WDT's witnesses located in NDCA.  *Id.* ¶ 7; Declaration of Idan Alrod In Support of WDT's Opposed Motion for Transfer ("Alrod Decl.") ¶¶ 4-21; D.I. 38 ("FAC") ¶ 15.  ████████████████████████████████████████

████████████████████████████████  Carter Decl. ¶ 7.

Viasat accuses products that embody the Accused Functionality of infringing the Asserted Patents, which claim error-correction techniques in flash memory.  None of the individuals responsible for developing the Accused Functionality are located in Texas.  WDT's key witnesses with unique and relevant knowledge are primarily located in its offices in NDCA and Kfar Saba, Israel.  *See* Alrod Decl. ¶¶ 4-20.  Specifically, the team that designs and develops the Sentinel Technology is based in Kfar Saba, Israel, and that team regularly works with WDT employees based in WDT's Milpitas, California office ("Milpitas Office") and its San Jose, California office ("Great Oaks Office") in NDCA to design and develop the Accused Functionality, including implementing the Sentinel Technology into various flash memory products, *id.* ¶¶ 4-6, including the following engineers:

1. Ms. Grishma Shah and Ms. Chris Yip are responsible for integrating the Sentinel Technology into various ████, client, and enterprise flash products.  Alrod Decl. ¶¶ 9, 12; Declaration of Yue (Joy) Wang In Support of WDT's Opposed Motion for Transfer ("Wang Decl.") Exs. 1, 2.

2. Mr. Tien-Chien Kuo is responsible for integrating the Sentinel Technology into various enterprise solid-state drive ("SSD") products.  Alrod Decl. ¶ 11; Wang Decl. Ex. 3.

---

[4] Viasat alleges in the FAC that WDT "has owned property at 19000 Limestone Commercial Drive 500, Pflugerville, Texas 78660 since at least 2019." FAC, ¶ 21.  Not so.  WDT has never owned or leased property at this location.  Carter Decl. ¶ 9.

3.      Mr. Niles Yang is responsible for integrating the Sentinel Technology into the WD Black product line.  Alrod Decl. ¶ 13; Wang Decl. Ex. 4.

4.      Mr. Jack Frayer, a member of Ms. Shah's team, designs memory systems for certain products that embody the Accused Functionality and works with the Kfar Saba team to, ████████████████████████████████████████████ ███████████████████████████████████  Alrod Decl. ¶ 10; Wang Decl. Ex. 5.

5.      Ms. Cynthia Hsu ███████████████████████████████████████████ ██████████████████████████████████  Alrod Decl. ¶ 14; Wang Decl. Ex. 6.

Members of the marketing, sales, and finance teams who are familiar with the products that embody the Accused Functionality are also located in WDT's offices in NDCA.  For example, Zaki Hassan, based in WDT's Great Oaks Office, is familiar with the marketing of products that embody the Accused Functionality, including total addressable market, market share, and marketing of the Sentinel Technology.  Alrod Decl. ¶ 17.  As another example, Cassandra Bailey, based in NDCA, is a sales representative who is familiar with some of the products that embody the Accused Functionality.  *Id.* ¶ 18.  Finally, Taya Zhou, based in WDT's Fremont, California office—also in NDCA—has accounting and finance knowledge relevant to this case.  *Id.* ¶ 19.

Viasat identified four WDT employees located in Austin office "who, on information and belief, contribute to [WDT's] sales of infringing products"—Robert Golla, Srini Vemuri, Scott Glenn, and Rick Vasquez.  *See* FAC at ¶ 22.  However, Messrs. Golla and Vemuri, who have since left the company, were engineers who worked solely on the development of RISC-V CPU architectures—a technology that is wholly unrelated to the Accused Functionality.[5]  *See* Alrod

---

[5] Viasat also alleges that WDT sought to hire a Research Staff Member in the CPU development group in this District, citing to a LinkedIn posting last visited in September 2021 that is no longer available.  *See* FAC at ¶ 26, n.12.  The alleged responsibilities of the position appear to coincide with an expired posting on SmartRecruiters.com.  Wang Decl. ¶ 9, Ex. 7.  That posting seeks an engineer to work on RISC-V and similar architectures which, again, are wholly unrelated to the Accused Functionality.  *See id.*; Alrod Decl. ¶ 20.

Decl. ¶ 20.  Further, to the extent Mr. Glenn and Mr. Vasquez are considered relevant, they do not have any unique information that could not also be provided by the rest of their teams, who are based in WDT's offices in or near NDCA.  *See id.* ¶¶ 6, 20.  For example, Ihab Hamadi, a colleague of Mr. Vasquez who is based in WDT's Roseville, California office, would have at least the same or better knowledge.  *Id.*  Similarly, most of Mr. Glenn's team is based in the Great Oaks Office, including Mr. Glenn's colleague Praveen Midha and his supervisor Zaki Hassan.  *Id.* ¶¶ 17, 20.  Even if they were relevant, Messrs. Glenn and Vasquez, as party witnesses, would travel to NDCA to testify.  *See id.* ¶ 20.

### B.    Viasat Is Headquartered In San Diego, California, And Has An NDCA Office

Viasat is incorporated in Delaware.  FAC ¶ 12.  Viasat's corporate headquarters and "largest site" is located in Carlsbad, California in the San Diego area.  *See id.*; Wang Decl. Exs. 8-9.  Viasat employs approximately 7,000 individuals worldwide, over 2,700 of whom live in the San Diego area.  *See id.* Exs. 8, 10.  Viasat's San Diego employees "work on all aspects of [its] business," including "core company functions, such as . . . [the] marketing, finance, and legal teams."  *See id.* Ex. 9.  For example, Jonathan Putnam, Viasat's Director of Patents—and prosecuting attorney of record for the '347 patent—is based in Carlsbad, California.  *See id.* ¶ 15 & Ex. 13.  Moreover, the majority of Viasat's leadership team, including its co-founder and Chief Executive Officer, its Chief Technical Officer, its Chief Financial Officer, and its General Counsel live in the San Diego area.  *See id.* ¶ 16 & Exs. 14 & 15.

Viasat also has an NDCA office, in San Jose, California with nearly 90 employees.  *See* Wang Decl. Exs. 10 & 16.  Viasat's engineers in its NDCA office work on a long-standing, core technology for Viasat—developing its ground systems infrastructure "designed to carry hundreds of gigabytes of traffic relayed by [its] satellites."  *See* Wang Decl. Ex. 16; FAC ¶¶ 28-31.  Viasat's NDCA presence is therefore likely relevant to this action because, as Viasat alleges, the Asserted

Patents claim applications of its existing satellite communications technology to flash memory. *See* FAC ¶ 32. For example, Gopi Selvarajan, who has been at Viasat since 2012 and presently resides in San Jose, California, is an "[a]rchitect and lead [for] SDN [Software Defined Networking] and SDWAN [Software Defined Wide Area Networking] controller[s]." Wang Decl. Ex. 17. Like the Asserted Patents, SDN and SDWAN controllers also employ forward error correction ("FEC") to correct errors in transmitted data. *See* FAC ¶¶ 31-32, 37; Wang Decl. Exs. 18 & 19.

In comparison to its San Diego headquarters and NDCA office, Viasat's presence in this District is insignificant and irrelevant.[6] Viasat's Austin office opened in December 2017—nearly a decade after the August 2009 priority date of the Asserted Patents and years after either patent was filed. *See* Wang Decl. ¶ 13 & Ex. 21. Viasat's presence in Austin, at a mere 30 people, is a tiny fraction (1%) of its California presence; moreover, it is not relevant to the allegations in this litigation because it is focused on "satellite service platforms; cloud, infrastructure, and security engineering, and [its] data science group." *See* FAC at ¶ 13; Wang Decl. Ex. 20. Accordingly, WDT is not aware of any relevant Viasat witnesses or documents located in this District.[7]

---

[6] Apparently acknowledging the relative convenience of California over this District, Viasat asked whether WDT would consider a stipulated transfer to the Central or Southern Districts of California during the parties' meet and confer regarding the present motion. *See* Wang Decl. ¶ 43.

[7] Viasat has a second Texas office outside this District in College Station, Texas. This office was established in 2014—also after the filing and claimed priority dates of the Asserted Patents. And its operations "focus[] on the company's managed Wi-Fi services business"—which are also not relevant to the facts at issue in this litigation. *See* Wang Decl. Ex. 22; *id.* Ex. 23 ("Viasat established its presence in College Station in 2014 when it acquired NetNearU, which designed and managed Wi-Fi network services for customers worldwide."). To the extent Viasat relies on its provision of internet services to consumers throughout the United States, including to Texas, to support its Texas presence, such presence is similarly irrelevant to the facts of this litigation. *See* Viasat Internet Provider, https://www.viasatprovider.com/ (last visited June 15, 2022).

### C.     All Third-Party Witnesses Are Located Outside Of WDTX

NDCA is more convenient for key third-party witnesses, all of whom are located outside the subpoena power of this Court.

First, several former SanDisk and WDT employees who have knowledge relevant to the Accused Functionality, as well as related work predating the Asserted Patents that is relevant to invalidity, reside in NDCA.  These include: (1) Jim Walsh, a former SSD Architect at Western Digital who resides in Santa Clara, California, and (2) Gautam Dusija, a former NAND flash system design engineer at Western Digital who resides in San Jose, California.  *See* Alrod Decl. ¶ 16; Wang Decl. Exs. 24 & 25.  Mr. Walsh and Mr. Dusija both worked on the implementation of the Sentinel Technology into products that embody the Accused Functionality.  Alrod Decl. ¶ 16.  Mr. Walsh worked to ████████████████████████████ and, for example, ████████████████████████████████████. *Id.*  Mr. Dusija worked ████ ████████████████████████████████████████████████████ ████████████████████████████. *Id.*

Second, WDT has identified third-party individuals and entities with knowledge of potential prior art systems who are based in NDCA, and thus outside the subpoena power of this Court:

1.     LingQi Zeng, Director, ECC Solutions & NAND Management Algorithms at SK Hynix Memory Solutions, Inc.  Since 2006, Mr. Zeng has worked on ECC (error correction code) and LDPC (low-density parity-check code) related technologies for hard disk drives.  SK Hynix "has a long history in ECC leadership, having firstly [*sic*] introduced LDPC coding in mobile storage application."  SK Hynix Memory Solutions, Inc. became SK Hynix Memory Solutions America, Inc. in 2018 and is located in San Jose, California, in NDCA.  Wang Decl. ¶ 31 & Exs. 26 & 27.

2.     Bill Radke, former Director of System Engineering at Micron Technology between 1998 and 2012.  *Id.*, ¶ 32 & Ex. 31. While at Micron, Mr. Radke "[o]ptimized & verified NAND behaviour [*sic*] algorithm development & validation, and recovery strategies including ECC and DSP [digital signal processing]." *Id.*, Ex. 31. Mr. Radke is also the named inventor of U.S. Patent Application Publication No. 2009/00132234A1, a prior art reference identified in WDT's June 10, 2022 Preliminary Infringement Contentions.   Mr. Radke is located in San Jose,

California, in NDCA.  In addition, Micron has published its work on ECC for NAND flash memory since as early as 2005 and participated in a flash storage developers conference, the Flash Memory Summit, since as early as 2006.  Micron is headquartered in Boise, Idaho, but has an office in Milpitas, California, in NDCA.  *Id*. ¶ 32 & Exs. 28-31.

3.    Ravi Motwani, Senior Principal Engineer at Intel Corp., has worked on "ECC/DSP for NAND Flash Memory" since 2010.  *Id*., Ex. 34.  Mr. Motwani also worked on "ECC/DSP for Hard [*sic*] disk drives" at Broadcom Corp. from 2005 to 2010.  *Id*.  Mr. Motwani is located in Santa Clara, California, in NDCA.  Broadcom Corp. is headquartered in San Jose, California, in NDCA.  In addition, on September 8, 2008, Intel announced the sale of X18-M and X-25-M Mainstream SATA SSDs that included a proprietary controller.  Intel Corp. is headquartered in Santa Clara, California, in NDCA.  *Id*. ¶ 33 & Exs. 32-35.

Lastly, Mymy Nguyen Henderson, the prosecuting attorney of record for the '700 patent, is located in Santa Clara, California, in NDCA.  *See id*. ¶ 14 & Ex. 12.

## III.   THIS COURT SHOULD TRANSFER THIS ACTION TO NDCA FOR THE CONVENIENCE OF THE PARTIES

WDT respectfully asks this Court to transfer this action to NDCA pursuant to 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses."  In the Fifth Circuit, a district court considering a motion pursuant to 28 U.S.C. § 1404(a) considers several private and public interest factors.  *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*).  The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id*.  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law."  *Id*.  (quotation omitted).  These factors are evaluated based on the situation that existed at the time of filing.  *In re HP Inc.*, 826 Fed. Appx 899, 903 (Fed. Cir. 2020) (citing *Hoffman v. Blaski*, 363

U.S. 335, 343 (1960)). The Court should grant the transfer motion where, as here, "the transferee venue is clearly more convenient." *Volkswagen II* at 315.  As illustrated below, five of the eight relevant factors favor transfer, and three factors are neutral; no factor weighs against transfer. Thus, WDT respectfully requests that the Court transfer this action to NDCA "[f]or the convenience of parties and witnesses" under 28 U.S.C. § 1404(a).

> ### A.     Venue Is Proper In The Northern District of California

Venue is proper in NDCA because WDT is headquartered in San Jose, California, in NDCA; thus, this case could have been brought there.  *See* 28 U.S.C. § 1400(b); Carter Decl. ¶ 3.

> ### B.     The Private Interest Factors Favor Transfer

The private interest factors overwhelmingly favor a transfer from this District to NDCA. Notably, WDT's small office in Austin is not relevant to the allegations of the litigation.  WDT has a significant and relevant presence in NDCA—it is headquartered in NDCA.  *See supra* § II.A. Similarly, Viasat has no relevant presence in this District.  *Id.*, § II.B.

> #### 1.     The *Access to Sources of Proof* Factor Favors Transfer

The "Access to Sources of Proof" factor "relates to the ease of access to non-witness evidence, such as documents and other physical evidence[.]"  *In re Apple, Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020) (citing *Volkswagen II*, 545 F.3d at 316-318); *In re TOA Techs., Inc.*, 543 Fed. Appx. 1006, 1009 (Fed. Cir. 2013) ("The critical inquiry 'is relative ease of access, not absolute ease of access'" (citing *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013))).  The "likely" location of the *defendant's* documents is important and "weighs in favor of transfer to that location." *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  Here, the most relevant U.S.-based sources of proof will predominantly come from NDCA, where the Accused Functionality was designed and developed, and *not* this District.  *See supra* § II.A; *LBT IP II LLC v. Uber Techs., Inc.*, No. 6:21-CV-1210-

8

ADA, 2022 WL 2541355, at *3 (W.D. Tex. July 6, 2022) (finding that "the fact that the accused products were developed in the NDCA means the most relevant sources of proof will predominantly come from that district").

This factor further favors transfer where the transferee forum is more proximate to "relevant third parties to the case" because third-party documents and other materials are likely located there. *Uniloc USA, Inc. v. Blackboard, Inc.*, No. A-17-cv-00753, 2020 WL 4578702, at *3 (W.D. Tex. May 15, 2020); *see also In re Samsung Elecs. Co.*, 2 F.4th 1371, 1374 & 1379 (Fed. Cir. 2021). WDT has already identified several highly relevant third parties located in NDCA— including former WDT employees with knowledge of the Accused Functionality, other manufacturers of flash products incorporating ECC technologies and their engineers, and one prosecuting attorney of the '700 patent—and no relevant third parties located in this District. *See supra* § II.C. The NDCA third parties are likely to have relevant sources of proof located in NDCA, not this District.

Moreover, neither WDT nor Viasat are likely to have any documents or other sources of proof located in, or uniquely accessible from, this District. However, both WDT and Viasat *are* likely to have documents and other sources of proof in NDCA. *See supra* § II.A & B; Alrod Decl. ¶ 21. As such, access to sources of proof is easier in NDCA than in this District. Therefore, this factor favors transfer to NDCA. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1254–55 (Fed. Cir. 2010).

### 2. The *Availability of Compulsory Process* Factor Favors Transfer

For this factor, "[t]he Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Moskowitz Fam. LLC. v. Globus Med., Inc.*, No. 6:19-CV-00672-ADA, 2020 WL 4577710, at *4 (W.D. Tex. July 2, 2020). This factor "weigh[s] heavily in favor of transfer"

when more third-party witnesses reside within the transferee venue than reside in the transferor

venue.  *See In re Apple, Inc.*, 581 Fed. Appx 886, 889 (Fed. Cir. 2014); *Camatic Proprietary Ltd.*

*v. Irwin Seating Co.*, No. 3:16-CV-0795-M, 2017 WL 2362029, at *4 (N.D. Tex. May 31, 2017).

Live testimony will be crucial for evaluating the credibility of the witness.  *See Aguilar-*

*Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992) ("Only through live cross-examination can the

jury fully appreciate the strength or weakness of the witness' testimony, by closely observing the

witness' demeanor, expressions, and intonations.").  Here, numerous individual third-party

witnesses are within the subpoena power of NDCA—Jim Walsh, Gautam Dusija, LingQi Zeng,

Bill Radke, Ravi Motwani, Mymy N. Henderson—but not in this Court's subpoena power.  In

contrast, WDT is not aware of any third-party witnesses in this District, or in the State of Texas

more generally.  *See supra* § II.C.

### 3.    The *Convenience of the Witnesses and Parties* Factor Favors Transfer

The "single most important factor in [the] transfer analysis" is the convenience—monetary

and personal—for willing witnesses.  *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318-19 (Fed.

Cir. 2021); *In re Adobe, Inc.,* 823 Fed. Appx. 929, 931 (Fed. Cir. 2020); *Hammond Dev. Int'l, Inc.*

*v. Amazon.com, Inc.*, No. 6:19-CV-00355-ADA, 2020 WL 6136783, at *3 (W.D. Tex. Mar. 30,

2020); *Moskowitz Fam.*, 2020 WL 4577710, at *4 (citing *In re Genentech*, 566 F.3d at 1343).  The

Fifth Circuit's 100-mile rule states that "the factor of inconvenience to witnesses increases in direct

relationship to the additional distance to be traveled" when that distance is more than 100 miles.

*Volkswagen II*, 545 F.3d at 317.  The Court must consider not only monetary costs, "but also the

personal costs associated with being away from work, family, and community."  *Id*.; *In re Google,*

*LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) ("[T]he inquiry should

focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a

distant forum and to be away from their homes and work for an extended period of time.").

This factor overwhelmingly favors transfer to NDCA because the vast majority of U.S.-based party and third-party witnesses are located in or closer to NDCA, rendering the cost of traveling to this District—monetary and personal—considerably higher than traveling to NDCA. In contrast, WDT is not aware of any party or nonparty witnesses located in this District or the State of Texas.

As identified in Section II.C, above, ten important third-party witnesses reside in NDCA, including a prosecuting attorney of record, at least three individual prior art witnesses, at least four entities that developed likely prior art systems, and two former Western Digital employees who played key roles in developing products that embody the Accused Functionality. *See supra* Section II.C. Similarly, ten key WDT party witnesses with knowledge relevant to the development, manufacturing, marketing, and sales of the Accused Functionality and the products that embody it also reside in NDCA, and one resides close to NDCA in Roseville, California. *See supra*, Section II.A; Alrod Decl. ¶¶ 4-20. As the Fifth Circuit recognized, it is an "'obvious conclusion' that it is more convenient for witnesses to testify at home and that 'additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *See Volkswagen II*, 545 F.3d at 317 (quoting *In re Volkswagen AG*, 371 F.3d 201, 205 (5th Cir. 2004) (*"Volkswagen I"*)). Maintaining this action in this District would require these important witnesses to be away from their families and regular employment for days at a time. In contrast, conducting trial in NDCA, "where more witnesses could testify without leaving their homes or their regular places of business," would be far more convenient for these witnesses. *See In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805,

at *6 (Fed. Cir. Oct. 13, 2021) (citing *In re TracFone Wireless, Inc.*, 852 Fed. Appx. 537, 539-40 (Fed. Cir. 2021)).

Indeed, there are no direct flights from NDCA to Waco, and the shortest flight time from NDCA to Waco is more than five hours; in contrast, there are three courthouses in NDCA that are an approximately 30 minutes to 1-hour drive for these NDCA witnesses.  *See* Wang Decl. ¶¶ 35-36 & Exs. 37-38.  This significant difference in travel time for WDT's witnesses weighs in favor of transfer.  *See Google*, 2021 WL 4427899, at *4 ("[travel] time is a more important metric than distance").  Moreover, "the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour."  *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-cv-141-LY, 2017 WL 4547916, at *3 (W.D. Tex. Oct. 11, 2017) (quoting *Volkswagen I*, 371 F.3d at 205).

Moreover, Viasat has no relevant ties whatsoever to this District, and therefore no witnesses here.  *See supra* § II.B.  Instead, Viasat's witnesses will likely be traveling from its San Diego headquarters or its NDCA office.  *See id.*; *Adobe*, 823 Fed. Appx. at 931 (finding this factor weighed in favor of a transfer where plaintiff's "own employees will be coming from outside both districts.").  NDCA is plainly more convenient for Viasat's California witnesses.  There are no direct flights from San Jose or San Diego to Waco; the shortest flight time from either location to Waco is at least five hours.  *See* Wang Decl. ¶¶ 36, 38 & Exs. 38, 40.  In contrast, flights from San Diego to NDCA are less than two hours, and Viasat's San Jose witnesses are within a 30-minute to 1-hour drive to three NDCA courthouses.  *See* Wang Decl. ¶¶ 37, 39 & Exs. 39, 41.  Thus,

convenience to Viasat's witnesses also weighs in favor of transfer.  *See In re Google LLC*, 2021 WL 4427899, at *4.

NDCA is clearly more convenient than this District.  Transferring this case to NDCA will greatly reduce the burden of travel for the vast majority of U.S.-based witnesses compared to retaining this case in this District.

### 4.     The *Practical Problems* Factor Favors Transfer

The final private interest factor encompasses "all other practical problems that make trial of a case easy, expeditious and inexpensive," generally determined at the time the suit was filed. *See Volkswagen II*, 545 F.3d at 315; *In re HP Inc.*, 826 Fed. Appx. at 903.

Here, the Asserted Patents have not been asserted in any prior litigation, so there are no efficiencies to be gained from this District's familiarity with the Asserted Patents.  *See* Wang Decl. at ¶ 13; *Atlassian*, 2021 WL 5292268, at *4.  Although Viasat has filed another case in this District against Kioxia America, Inc. and KIOXIA Corporation (collectively, "Kioxia"), that case involves only one of the Asserted Patents, the '700 patent, and Viasat accuses a completely different set of products.  *See Viasat, Inc. v. KIOXIA Corp. et al.*, Case No. 6:21-cv-1231-ADA, D.I. 1 (W.D. Tex., Nov. 29, 2021).  It is thus "likely that [Viasat's] cases will result in significantly different discovery, evidence, proceedings, and trial."  *Samsung*, 2 F.4th at 1379-80 (quoting *In re Zimmer Hldgs., Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010)).

Importantly, WDT understands that Kioxia also intends to seek transfer to NDCA, and so any potential judicial economy arising from this second suit has little weight.  *See Atlassian*, 2021 WL 5292268, at *4 (Fed. Cir. Nov. 15, 2021) ("[C]o-pending suits [filed on the same day] are not to be over-weighed if they are also the subject of motions to transfer.").  Additionally, WDT has filed suit against Viasat in NDCA.  Wang Decl. ¶ 40.  While different patents are asserted, efficiencies will be gained by only one judge learning about Western Digital and Viasat, as opposed to two.  *See* Wang

Decl. Ex. 42.  Moreover, in the event the cases are coordinated after transfer to NDCA, efficiencies will be gained by having certain witnesses—*e.g.*, sales, marketing, or financial witnesses—testify only once.  *See* N.D. Cal. Civ. R. 3-12(a) (defining related cases as "actions [that] concern[] substantially the same parties, property, transaction, or event; and [i]t appears likely that there will be an unduly burdensome duplication of labor . . . if the cases are conducted before different Judges"); *see also J.R. Simplot Co. v. McCain Foods USA, Inc.*, No. 1:16-cv-00449-DCN, 2017 WL 5192223, at *2 (D. Idaho Nov. 09, 2017) ("[A]lthough McCain's case is somewhat 'behind' Simplot's, 'a common question of law or fact' is present in both cases"); Fed. R. Civ. P. 42(a).  Finally, both of Viasat's cases before this Court are in their early stages; claim construction is ongoing, and fact discovery is not yet open.  As a result, a prompt transfer will not cause delays in either case.  Under these circumstances, this factor is neutral because "the incremental gains in keeping [Viasat's] cases in the Western District of Texas simply are not sufficient to justify overriding the inconvenience to the parties and witnesses."  *See In re Samsung*, 2 F.4th at 1380.

## C.     The Public Interest Factors Favor Transfer

The public interest factors are either neutral or favor a transfer from this District to NDCA. Based on current U.S. District Court statistics, this case is likely to reach disposition as quickly in NDCA as it would in this District.  As to local interest, WDT's presence in NDCA is highly relevant because the U.S.-based design and development of the Accused Functionality occurred in NDCA and WDT is headquartered in NDCA.  *See supra* § II.A.  Similarly, Viasat has a significant and relevant presence in NDCA, whereas neither WDT nor Viasat have a relevant connection to this District or a significant presence here.  *See supra* § II.A & B.  The remaining factors— familiarity of the laws and conflict of laws—are neutral.

### 1.     The *Court Congestion* Factor Is Neutral

Under this factor, the Court must evaluate "the speed with which a case can come to trial

and be resolved." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). When other relevant factors weigh in favor of transfer or are neutral, however "then the speed of the transferee district court should not alone outweigh all of those other factors." *Id.*; *see also In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *5 (Fed. Cir. Jan. 19, 2022) (holding that the provided "time-to-trial statistics" are "plainly insufficient to warrant keeping this case in the Texas forum given the striking imbalance favoring transfer based on the other convenience factors"). The Court's general ability to set a trial schedule is not relevant to this factor. *In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020). In addition to time to trial statistics for the transferor and transferee forums, other considerations include the number of cases per judge and the speed and availability of other case dispositions. *See In re Atlassian Corp. PLC*, No. 2021-177, 2021 WL 5292268, at *4 (Fed. Cir. Nov. 15, 2021).

This factor is neutral. U.S. District Court statistics for the 12-month period ending March 31, 2022, show that the median times to trial and disposition during trial for civil cases in NDCA and this District are comparable with each other and below the national average. *See* Wang Decl. Ex. 43 (reporting, *inter alia*, that the median time from filing to trial in civil cases for the 12-month period ending March 31, 2022 was 31.1 months for NDCA and 27.2 months in District, both below the national average of 32.6 months); *id.*, Ex. 44 (reporting, *inter alia*, that the median time from filing to disposition during trial of terminated civil cases for the 12-month period ending March 31, 2022 was 28.7 months for NDCA and 29.4 months for this District, both below the national average of 29.8 months). Moreover, the same statistics show that the median times to other types of disposition (without court action, before pretrial, and during or after pretrial) are comparable with each other and the national average. *Id.* In addition, as of July 18, 2022, this Court alone has at least 650 *more* active patent cases than all of the NDCA judges combined, has approximately 20% of all active district court patent cases, and approximately 96% of all active patent cases in WDTX. *See* Wang Decl. at ¶ 42.

Although this Court has set a tentative trial date, scheduled trial dates are often subject to change, especially given this Court's substantial current case load, and this Court's historical time to trial is significantly longer than the scheduled time to trial.  *See* D.I. 43; Wang Decl. Ex. 43; *Apple*, 979 F.3d at 1344 n.5; *Netflix*, 2022 WL 167470, at *5.  Thus, if transferred to NDCA, this case is likely to reach disposition, by trial or otherwise, as quickly, if not more quickly, than it would in this District.

### 2.    The *Local Interest* Factor Favors Transfer

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home.  *Volkswagen II*, 545 F.3d at 317.  It considers the "significant connections between a particular venue *and the events that gave rise to a suit*."  *Apple*, 979 F.3d at 1345 (citing *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)); *see also Volkswagen II*, 545 F.3d at 318; *In re HP Inc.*, 826 Fed. Appx. at 903–04); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009); *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-4387-K, 2015 WL 13870507, at *4 (N.D. Tex. July 23, 2015).  This factor favors transfer for at least three reasons.

First, there is no connection between this District and Viasat's acts of purported invention. The named inventors of the Asserted Patent are not located in this District.  Wang Decl. ¶ 13. Although Viasat has an Austin office, it opened in December 2017, years after the Asserted Patents were filed.  *See supra*, Section II.B; Wang Decl. Ex. 21.  Moreover, none of Viasat's current operations in that office have anything to do with the FEC technology claimed in the Asserted Patents.  *See supra*, Section II.B; Wang Decl. Exs. 20 & 21.  Thus, no acts of invention, conception, or reduction to practice occurred in this District or in Texas more generally.

Second, there is no connection between this District and WDT's alleged acts of infringement.  *See supra* Section II.A; Alrod Decl. ¶¶ 4-21.  None of the individuals responsible for developing the Accused Functionality are located in Texas.  *Id.*  And the few WDT employees in its Austin office—and in Texas more generally—have no access to the documents relevant to

the Accused Functionality and have no unique knowledge relevant to the allegations in this litigation that cannot be provided by WDT witnesses located in NDCA.  Carter Decl. ¶ 7; Alrod Decl. ¶¶ 6, 21.

Third, WDT has a significant U.S. presence—including significant relevant facilities and employees—in NDCA.  *See supra* Section II.A; Carter Decl. ¶¶ 3-4; Alrod Decl. ¶¶ 4-20.  U.S.-based WDT engineers responsible for the design and development of the Accused Functionality—specifically, implementing the Sentinel Technology into various flash memory products—(and their teams) are based in WDT's offices in NDCA.  *See* Alrod Decl. ¶¶ 4-20.  Moreover, members of WDT's marketing, financing, and sales teams with knowledge relevant to the Accused Functionality are also based in NDCA.  *See id.*

Finally, "[t]he fact that infringement is alleged in the Western District of Texas gives [this District] no more of a local interest than the Northern District of California or any other venue." *Samsung*, 2 F.4th at 1380.  In fact, Viasat admits that the products that embody the Accused Functionality are sold nationwide, not just in this District.  FAC ¶ 8.  Thus, Viasat's allegations of infringement in this District cannot override (or even impinge on) NDCA's significant local interest in deciding local issues of WDT's alleged infringement at home.  *See Hoffmann-La Roche*, 587 F.3d at 1338 ("[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue."); *In re TOA Techs., Inc.*, 543 Fed. Appx. 1006, 1009 (Fed. Cir. 2013); *Camatic Proprietary Ltd. v. Irwin Seating Co.*, No. 3:16-cv-0795-M, 2017 WL 2362029, at *6 (N.D. Tex. May 31, 2017).

Thus, where the events underlying WDT's alleged infringements occurred mainly in NDCA and not at all in this District, NDCA has a greater local interest.  As such, this factor favors transfer.  *See In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319-20 (Fed. Cir. 2021).

### 3.     The *Familiarity with the Law* Factor is Neutral

Viasat alleges only patent claims.  Both this District and NDCA are "equally capable of construing and applying patent law."  *Camatic*, 2017 WL 2362029, at *7.  Therefore, the third public interest factor is neutral.  *Id.*

### 4.     The *Conflict of Laws* Factor is Neutral

The final public interest factor considers the avoidance of unnecessary problems of conflicts of law or the application of foreign law.  "[F]ederal district courts are of equal jurisdiction, and the national patent system, where all appeals go to the Federal Circuit, eliminates the risk of conflicting circuit precedent."  *Camatic*, 2017 WL 2362029, at *7.  Therefore, the fourth public interest factor is neutral.  *Id.*

In summary, this Court should transfer this action to NDCA because five of the eight factors weigh in favor of transfer, three are neutral, and not one weighs against transfer, as summarized in the following table:

| Factor | Outcome |
|---|---|
| Relative ease of access to sources of proof | Favors Transfer |
| Availability of compulsory process to secure attendance of witnesses | Favors Transfer |
| Cost of attendance of willing witnesses | Strongly Favors Transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Favors Transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest in having local interests decided at home | Favors Transfer |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Avoidance of unnecessary problems of conflict of laws or the application of foreign law | Neutral |

## IV.     CONCLUSION

For the reasons set forth above, WDT respectfully requests that the Court transfer this action to the U.S. District Court for the Northern District of California for the convenience of the

parties.  Pursuant to Local Rule CV-7(g), the parties have conferred on this motion.  WDT requests

an oral hearing on this motion.

Dated:  August 4, 2022

Respectfully submitted,

/s/ *L. Kieran Kieckhefer*

L. Kieran Kieckhefer (*pro hac vice*)
Shearman & Sterling LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: 415.616.1124
Facsimile: 415.616.1199
Kieran.Kieckhefer@Shearman.com

David P. Whittlesey
Shearman & Sterling LLP
300 West 6th Street, 22nd Floor
Austin, TX 78701
Telephone: 512.647.1907
Facsimile: 512.857.6602
David.Whittlesey@Shearman.com

Matthew G. Berkowitz (*pro hac vice*)
Patrick Colsher (*pro hac vice*)
Lillian J. Mao (*pro hac vice*)
Yue (Joy) Wang (pro hac vice)
Shearman & Sterling LLP
1460 El Camino Real, 2nd Floor
Menlo Park, CA 94025
Telephone: 650.838.3737
Facsimile: 650.838.5141
Matt.Berkowitz@Shearman.com
Patrick.Colsher@Shearman.com
Lillian.Mao@Shearman.com
Joy.Wang@Shearman.com

Ahmed ElDessouki (*pro hac vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Telephone: 212.848.4908
Ahmed.ElDessouki@Shearman.com

*Counsel for Defendants Western Digital Corporation and Western Digital Techs., Inc.*

## **CERTIFICATE OF CONFERENCE**

On July 8 and 13, 2022, counsel for WDT spoke with counsel for Viasat regarding whether WDT's motion for transfer would be opposed.  On July 13, 2022, counsel for Viasat confirmed that it will oppose WDT's motion for transfer.

/s/ *L. Kieran Kieckhefer*
L. Kieran Kieckhefer

## **CERTIFICATE OF SERVICE**

The undersigned hereby certified that a true and correct copy of the above and foregoing document has been served on August 4, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF.

/s/ *Amanda Adame*
Amanda Adame