IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **VIASAT, INC.,**<br><br>　　Plaintiff,<br><br>vs.<br><br>**WESTERN DIGITAL CORPORATION and WESTERN DIGITAL TECHNOLOGIES, INC.,**<br><br>　　Defendants. | Case No.: 6:21-cv-01230-ADA<br><br>JURY TRIAL DEMANDED |

## **DISCOVERY DISPUTE ORDER**

The Court hereby resolves the following discovery dispute submitted by email.

**ISSUE #1**:　Whether Defendant Western Digital must provide venue discovery responses for all Accused Products or only for those Accused Products that utilize the Sentinel technology.

**Plaintiff's Position:**

Western Digital has refused to provide discovery on all of accused products, which are flash-memory devices that incorporate error detection and correction technology (listed in Exhibit A of Viasat's discovery requests). It has instead unilaterally limited venue discovery to only a subset of the accused products. Viasat is concerned that Western Digital is cherry-picking products that have fewer connections to Texas and therefore requests that Western Digital provide discovery on the full scope of accused products.

The accused products include certain products that Western Digital says do not utilize Sentinel technology. Western Digital argues that the products that do not utilize Sentinel

technology have not been accused of infringement and are therefore beyond the scope of venue discovery. That is simply false. Viasat has repeatedly accused these products of infringement. Western Digital's motion to strike all non-Sentinel accused products from Viasat's infringement contentions was denied. D.I. 64.

Viasat is not revisiting, for now, its request for core technical documents relating to these non-Sentinel accused products as Western Digital suggests. It is simply seeking venue-related information about these products. It is not unduly burdensome for Western Digital to confirm whether its non-Sentinel accused products were/are designed, developed, and manufactured in-house or by third-parties. Nor is it unduly burdensome for it to state where any third-parties or Western Digital teams responsible for the design, development, or manufacture of non-Sentinel controllers are located. These questions are central to the venue determination that Western Digital injected into this case.

This discovery is particularly relevant because Western Digital has admitted that it purchases some accused non-Sentinel controllers from third-parties. D.I. 54 at 3; Alrod Declaration in Support of D.I. 54 at ¶4. Western Digital also recently relied upon supplier relationships with TSMC and AMD in Austin in another case where it sought intradistrict transfer from Waco to Austin. *See Ocean Semiconductor LLC v. Western Digital Tech.*, Inc., No. 6:20-cv-01216-ADA, D.I. 37 at 7 (W.D.T.X.). The products accused in that case include a large number of flash memory products (e.g., "iNAND®" branded flash memory products). *Ocean Semiconductor*, D.I. 1 at 4, 6-8, 11. The accused products there also recite, generally, "flash memory (e.g., 3D flash and NAND flash)." Id. at 5, 7, 9, 11. While the Complaint in *Ocean Semiconductor* does not list any specific products that are also accused here, the accused products in this case are all NAND flash memory products. Moreover, TSMC manufactures and supplies controllers for flash memory devices that

support error correction code. Viasat is allowed discovery to determine whether TSMC or any other third-parties located in WDTX supply or manufacture any of the accused products (or components used in the accused products). Western Digital should not be allowed to avoid responding to venue discovery regarding a subset of accused products to avoid providing this highly relevant information.

**Plaintiff's Requested Relief:**

Order that "Western Digital must include information regarding the accused products it alleges do not utilize Sentinel technology in its responses to Viasat's venue discovery requests."

**Western Digital's Position:**

The Court has previously addressed the scope of "accused products" and denied Viasat's attempt to demand discovery on products for which it did not chart in its infringement contentions or explain why such products were reasonably similar to any charted product.  D.I. 64 (Order); *see also* D.I. 63 (7/19/22 Tr.).  WDT respectfully requests that the Court again deny Viasat's renewed attempt through venue discovery.

Viasat's First Amended Complaint ("FAC") focuses exclusively on the use of WDT's Sentinel technology ("Sentinel") as the basis for the purported infringement.  Viasat's Preliminary Infringement Contentions ("PICs") charted the accused WDT products on the basis of Sentinel (and only Sentinel).  Viasat did not chart any other error correction technology.

Despite relying solely on Sentinel in its FAC and PICs, Viasat has identified a variety of additional products that do not include Sentinel ("Non-Sentinel" products) in its PICs and for purposes of venue discovery.  Viasat did not chart any such additional products.  Viasat has not explained why the Non-Sentinel products purportedly infringe or why they are reasonably similar to the charted Sentinel products.  Importantly, since the July 19 discovery hearing,

notwithstanding the Court's guidance, Viasat *has not* (1) amended its contentions to chart the Non-Sentinel products; (2) provided any explanation as to why the Non-Sentinel products are reasonably similar to the charted Sentinel products; or (3) attempted in any other way to properly bring the Non-Sentinel products into the case, including after its source-code review. *See* D.I. 63 (7/19/22 Tr.) at 21:15-25:17.

Because Viasat has not set forth **any** infringement theory that is **not** based on Sentinel, the Non-Sentinel products are not properly in the case. *WSOU Investments LLC v. OnePlus Tech. (Shenzhen) Co.*, 2022 WL 174517, at *2–3 (W.D. Tex. Jan. 18, 2022) ("WSOU must provide sufficient notice . . . for each of the accused products, either with individual charts or with detailed descriptions of how each product is represented by the single charted product."); OGP at 2. Viasat cannot just name products without setting forth an infringement theory, without explaining how the additional uncharted products are "reasonably similar" to those specifically charted, and then demand that WDT produce venue discovery on all named products. *See Vervain, LLC v. Micron Tech., Inc.*, No. 6-21-cv-00487-ADA, D.I. 59 at 9 (W.D. Tex. Apr. 20, 2022) (Viasat "cannot simply list products in its contentions that it believes are reasonably similar. It must illustrate why they are.").

It is of no moment that Viasat is now seeking venue discovery rather than technical documents, as it was before. Viasat is not entitled to discovery on products simply because it names them. WDT should not be forced to expend resources on issues that Viasat has not shown to be relevant. Viasat's reliance on *Ocean* is a red herring. AMD was relevant to the *Ocean* case because it was the former ***patent*** owner (not a supplier). TSMC was at issue because the patent claims (and Ocean's 271(g)-based infringement assertions) were directed to processes allegedly performed by TSMC in manufacturing wafers using third-party tools. Here, the claims (and

4

Viasat's infringement assertions) focus on the operation and functionality of a finished product. And, regardless, WDT has already identified through an Interrogatory Response the third-party foundries including TSMC.

Lastly, Viasat's requests are unduly burdensome—particularly, of course, because Viasat has not met its burden to properly bring a wide variety of Non-Sentinel products into the case. Viasat's requested discovery is incredibly expansive, not readily identifiable, not something one witness can testify to, and would require significant work taking an extensive amount of time and resources.

**Western Digital's Requested Relief:**

Order that "Viasat is precluded from seeking venue discovery on non-Sentinel products."

**Ruling:**

The Court ORDERS Defendant Western Digital to provide responses to discovery and produce responsive documents regarding all accused products listed on Viasat's Exhibit A to its First Set of Interrogatories Regarding Venue To Defendant Western Digital Technologies, Inc.

**ISSUE #2**: Whether Defendant Western Digital must provide a response to Viasat's Interrogatory Number 4.

**Plaintiff's Position:**

Viasat's Interrogatory 4 seeks a description of business activities carried out by and on behalf of Western Digital in Israel. Viasat has agreed to narrow its request to those activities related to the Asserted Patents, the Accused Products, or Western Digital's error detection and correction technologies. The evidence from Western Digital to date suggests that individuals most knowledgeable regarding the key issues in this case are located in Israel, not NDCA. If the

relevant witnesses and sources of proof are in Israel and not WDTX or NDCA, Western Digital cannot establish NDCA is more convenient.

It is Western Digital's burden to prove that the NDCA is more convenient than WDTX. Relevant to this inquiry is whether transfer will result in easier access to relevant sources of proof and the cost of attendance of willing witnesses. *Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022). Under Fifth Circuit law, the cost of attendance of willing witnesses is relevant, as is the physical distance those witnesses must travel under the 100-mile rule. *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004). Therefore, Viasat should be allowed discovery regarding where *all* relevant witnesses are located.

This is equally true under the Federal Circuit precedent interpreting Fifth Circuit law that Western Digital relies upon. The cases Western Digital has cited to Viasat discourage the 100-mile rule from being applied too rigidly. Viasat is not advocating an overly rigid application of the rule. It merely seeks venue discovery on witnesses in a location that Western Digital itself has already injected into the case as being highly relevant.

Western Digital has, for example, offered two declarations by Mr. Idan Alrod, who has represented himself as the individual most knowledgeable regarding error correction code technology at Western Digital. He and his team are based in Western Digital's Kfar Saba, Israel Office. Moreover, the authors of the limited set of core technical documents that Western Digital produced as describing the accused products include at least 20 other individuals who appear to be located in Israel: Alex Bazarsky, Ariel Navon, Eran Sharon, Idan Goldenberg, Igal Mariasin, Ishai Ilani, Omer Fainzilber, Ran Zamir, Timur Vekslender, Yan Dumchin, Yuri Raining, Michael Tomashev, Hanan Borukhov, Amir Rozen, Noam Presman, Idan Alrod, Simon Litsyn, Yair Baram, Stella Achtenberg, Dudy Avraham, and Alexander Berger.

Therefore, Western Digital's statements that relevant individuals are in NDCA appears to be pretextual. The relevant witnesses appear to all be located in Israel. Viasat is allowed to pursue discovery to confirm this.

Finally, even if Western Digital were correct in its interpretation of the Federal Circuit law it cites, Viasat is permitted to discovery that will allow it to make "non-frivolous challenges to the Federal Circuit's interpretation of Fifth Circuit transfer law." *See Greenthread, LLC v. Intel Corp. et al.*, No. 6:22-cv-00105-ADA, D.I. 76 at 9 (WDTX).

**Plaintiff's Requested Relief:**

Order that "Western Digital must respond to Viasat's Venue Interrogatory No. 4."

**Western Digital's Position:**

Viasat's request should be denied for three independent reasons.

First, the OGP limits Viasat to five interrogatories for venue discovery.  *See* OGP at 5.  Although Viasat served five numbered interrogatories (1-5), Viasat's Interrogatory No. 1 *alone* well exceeded its allotment by broadly seeking the three most knowledgeable persons for each of six discrete topics (design, development, testing, manufacturing, marketing, and sales).  Such topics are not logically or factually subsumed within and necessarily related to the primary question and thus are properly treated as six interrogatories.  *See, e.g.*, *Superior Sales West, Inc. v. Gonzalez*, 335 F.R.D. 98, 104-05 (W.D. Tex. 2020).  On this basis alone, Viasat's request should be denied.

Despite Viasat's excessive number of interrogatories, WDT already agreed to respond to all but Interrogatory No. 4 in order to avoid burdening this Court.  Interrogatory No. 4, however, is especially problematic for a second reason: discovery into "business activities" in *Israel*, is minimally relevant (if relevant at all), to whether NDCA is a clearly more convenient forum than

WDTX. "Business activities" in Israel—and those carrying out such activities—have little bearing on the transfer analysis. *See, e.g.*, *In re Apple, Inc.*, 979 F.3d 1332, 1341–42 (Fed. Cir. 2020); *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021); *In re Google LLC*, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021); *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004).

Lastly, Viasat's request is incredibly burdensome. Viasat's interrogatory is not "narrow" as Viasat suggests (nor did Viasat "agree[] to narrow" it). The interrogatory is, in fact, extremely broad and burdensome, as it would require WDT investigate any and all "business activities" in Israel that are "related to the Asserted Patents, the Accused Products, or Western Digital's error detection and correction technologies" without any temporal limitation or consideration of whether the information sought has any relevance to the venue issues. For example, the interrogatory, as written, would encompass any sales, marketing or other "activity" that is "related to" the Accused Products, regardless of whether the activity was directed or related in any way to the U.S. such that it might be relevant to infringement of U.S. patent laws that this Court might address. WDT should not be required to respond to such an expansive request in view of its limited, if any, relevance to the determination of the more convenient venue in this case. *See, e.g.*, Fed. R. Civ. 26(b)(1).

**Western Digital's Requested Relief:**

Order that "Western Digital does not need to respond to Viasat's Venue Interrogatory No. 4."

**Ruling:**

The Court ORDERS Defendant Western Digital to designate a witness to testify at deposition, pursuant to Federal Rule of Civil Procedure 30(b)(6), on the subject matter of Viasat's

Interrogatory Number 4 from Viasat's First Set of Interrogatories Regarding Venue To Defendant Western Digital Technologies, Inc. The Court GRANTS Viasat an additional two hours of venue-related deposition time to address issues related to Western Digital's business activities in Israel regarding the accused products.

SIGNED this 18th day of October, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE