IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| VIASAT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>WESTERN DIGITAL CORPORATION and WESTERN DIGITAL TECHNOLOGIES, INC.,<br><br>Defendants. | Case No. 6:21-cv-01230-ADA<br><br>**JURY TRIAL DEMANDED**<br><br>███████████████████████<br>████████ |

**VIASAT, INC.'S MOTION TO DISQUALIFY THE GIBSON DUNN LAW FIRM
AS COUNSEL FOR DEFENDANTS**

**TABLE OF CONTENTS**

I.    Legal Standard .................................................................................................................2

II.   Gibson Dunn Cannot Be Adverse To Viasat In This Case Without A Waiver ...................3

       A.    Gibson Dunn Represents Viasat In A Substantially Related Matter .......................3

            1.    Viasat Engaged Gibson Dunn For The *Acacia* Litigation ..........................3

            2.    *Acacia* Involves The Same Viasat Inventors, Similar Technology, And A License That Is Part Of Viasat's Damages Theory ..........................6

       B.    Viasat Is Gibson Dunn's Current Client ...................................................................9

       C.    Gibson Dunn's Conflicts Are Imputed To The Firm As A Whole........................12

       D.    Gibson Dunn Rejected Viasat's Suggestion Of An Ethical Wall ..........................13

III.  Conclusion .......................................................................................................................14

# TABLE OF AUTHORITIES

**Federal Cases**

*Adaptix, Inc. v. Dell, Inc.*,
　No. 6:13cv437, 2014 WL 11730482 (E.D. Tex. Feb. 12, 2014) ........................................... 3, 5

*City of El Paso v. Salas-Porras Soule*,
　6 F. Supp. 2d 616 (W.D. Tex. 1998) ................................................................................... 3, 5

*Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*,
　No. 3:10-CV-276-F, 2011 WL 13201855 (N.D. Tex. Sept. 12, 2011) ........................... 9, 10, 11

*Hillman Grp., Inc. v. KeyMe, LLC*,
　439 F. Supp. 3d 845 (E.D. Tex. 2020) ............................................................................ 9, 10, 11

*In re Am. Airlines, Inc.*,
　972 F.2d 605 (5th Cir. 1992) .................................................................................................. 2, 7

*In re Dresser Indus., Inc.*,
　972 F.2d 540 (5th Cir. 1992) ................................................................................................ 2, 13

*John Crane Prod. Sols., Inc. v. R2R & D, LLC*,
　No. 3:11-CV-3237-D, 2012 WL 3453696 (N.D. Tex. Aug. 14, 2012) .................................. 7, 9

*United States v. Kitchin*,
　592 F.2d 900 (5th Cir. 1979) ..................................................................................................... 12

*United States v. Ross*,
　33 F.3d 1507 (11th Cir. 1994) .................................................................................................... 12

*Viasat, Inc. v. Acacia Commc'ns, Inc.*,
　No. D077111, 2022 WL 1617118 (Cal. Ct. App. May 23, 2022) ..................................... *passim*

**Rules**

ABA Model Rule 1.10 ................................................................................................................ 12

ABA Model Rule 1.7 ............................................................................................................. 9, 12

ABA Model Rule 1.9 ..................................................................................................................... 6

Texas Disciplinary Rules of Prof'l Conduct Rule 1.06 ........................................................... 9, 12

Texas Disciplinary Rules of Prof'l Conduct Rule 1.09 ................................................................. 6

W.D. Tex. Local Rule AT-7(a) ..................................................................................................... 2

In 2021, Viasat sued Western Digital for infringing two Viasat patents related to particular implementations of forward error correction in flash memory systems. Lawyers from the law firm Shearman and Sterling have represented Western Digital since the beginning. *See* D.I. 23-27. But in May 2023, Western Digital's lead counsel, Kieran Kieckhefer, moved to Gibson Dunn. Lateral moves like that are common.

What is *uncommon* is that Ms. Kieckhefer's move caused a direct conflict that Gibson Dunn did not clear with Viasat. Gibson Dunn represents *Viasat* in a case that, fundamentally, concerns the value of Viasat's forward error correction technology. Viasat licensed that technology to another company, Acacia. When Acacia used the technology in breach of the parties' license agreement, Viasat sued Acacia. A jury awarded Viasat $49.3 million for just some of Acacia's misuses of Viasat's IP. Viasat hired Gibson Dunn to provide appellate counsel, making arguments in support of the value of Viasat's forward error correction technology. Viasat's litigation with Acacia is ongoing: Viasat was recently awarded another $100 million for additional damages, and a second appeal is now pending.

Nevertheless, Gibson Dunn seeks to be adverse to Viasat in this case—a case in which the value of Viasat's license to Acacia is probative of the reasonable royalties that Western Digital owes Viasat for its own infringement of Viasat's intellectual property. In other words, Gibson Dunn now seeks to attack the value of the same license it is retained (and has worked) as Viasat's counsel to support.

Beyond the ongoing Acacia-license litigation, Viasat has been Gibson Dunn's client for more than five years. Gibson Dunn has billed Viasat more than $█ million for legal services and has been active on multiple Viasat matters. Some of those other matters are ongoing. Gibson Dunn has billed Viasat for its legal counsel for time spent on matters every month since September 2022.

Indeed, on the same day that Gibson Dunn informed Viasat of Ms. Kieckhefer's move, Viasat actively consulted with Gibson Dunn lawyers.

The conflict is clear. Viasat is Gibson Dunn's current client *and* Gibson Dunn represents Viasat on issues that are substantially related to this case. Either alone is enough justification to disqualify Gibson Dunn. Together, the conflict—and risks that Viasat information is improperly used against Viasat—is overwhelming. And yet, Viasat has been willing to provide a waiver premised on the adoption of an ethical wall that protects Viasat's confidences and appropriately shields Viasat from impropriety. To date, Gibson Dunn has refused.

## I. Legal Standard

"[D]isqualification cases are governed by state and national ethical standards adopted by the court." *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992) (applying the ABA Model Rules). In this case, those ethical standards include this Court's Local Rules, the ABA Model Rules of Professional Conduct, the Texas Rules of Professional Conduct, and the local rules. *Id.* Under the local rules for the Western District of Texas, "[m]embers of the bar of this court and any attorney permitted to practice before this court must comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct." Local Rule AT-7(a). "[W]hether and how these rules are to be applied are questions of federal law." *Am. Airlines*, 972 F.2d at 610.

The Fifth Circuit is clear: "Unquestionably, the national standards of attorney conduct forbid a lawyer from bringing a suit against a current client without the consent of both clients." *In re Dresser Indus., Inc.*, 972 F.2d 540, 545 (5th Cir. 1992). If the client is a former one, "an attorney could not sue a former client in a matter substantially related to the representation of a former client." *Id.* at 544. And "[e]ven when matters are not substantially related, a former client may still disqualify former counsel by showing that confidential information was provided to

counsel and that the confidential information is relevant to the new matter." *Adaptix, Inc. v. Dell, Inc.*, No. 6:13cv437, 2014 WL 11730482, at *7, (E.D. Tex. Feb. 12, 2014); *see also City of El Paso v. Salas-Porras Soule*, 6 F. Supp. 2d 616, 624 (W.D. Tex. 1998) ("disqualification may be warranted if the former attorney possesses relevant confidential information"). Under *any* of these legal tests, Gibson Dunn must be disqualified.

## II.   Gibson Dunn Cannot Be Adverse To Viasat In This Case Without A Waiver

Viasat is a global communications company with wide-ranging legal concerns—from patent, trade secret, and contract litigation to national defense-related import and export compliance work to work with government agencies like the FCC. Viasat has engaged legal counsel to advise and navigate these assorted legal landscapes. For more than five years—and across a variety of matters—Gibson Dunn has been among Viasat's legal counsel on such matters.

One of those matters is substantially related to the case at hand—it concerns similar technology, the same inventors, and a license that Viasat contends is comparable under the *Georgia-Pacific* factors. Those circumstances present Gibson Dunn with a conflict of interest— one that black letter law and all applicable ethical rules impute to the entire law firm. Gibson Dunn cannot represent Western Digital in this case without Viasat's consent.

### A.   Gibson Dunn Represents Viasat In A Substantially Related Matter

Gibson Dunn's appearance in this matter is unacceptable. Gibson Dunn has provided appellate counseling to Viasat in litigation concerning a license to similar technology as that at issue here, created by an overlapping group of inventors—a license that is relevant to Viasat's damages in this case.

#### 1.   Viasat Engaged Gibson Dunn For The *Acacia* Litigation

Viasat brought trade secret and contract claims against Acacia Communications, Inc. for misusing bespoke forward error correction technology. As the California Court of Appeal put it at

3

the conclusion of the first *Acacia* case, "At its core, this case is a dispute over how Acacia could use Viasat's technology under their Agreement"—a development and license agreement under which Acacia committed to pay Viasat royalties. *Viasat, Inc. v. Acacia Commc'ns, Inc.*, No. D077111, 2022 WL 1617118, at *2 (Cal. Ct. App. May 23, 2022).

Viasat first sued Acacia in 2016 for trade secret misappropriation, breach of contract, and breach of the implied covenant of good faith and fair dealing for developing products using Viasat's error correction technology without payment. *Id.* at *4. The case went to trial in mid-2019. The jury found that Acacia breached the contract, breached the implied covenant, and misappropriated Viasat's trade secrets. *Id.* at *5. The jury awarded $49.3 million in contract damages and $1 in misappropriation damages. *Id.* Acacia and Viasat both appealed in December 2019.

In early 2020, Viasat retained Gibson Dunn to help with the appeal. Ex. 1. In the engagement agreement, Gibson Dunn agreed not to represent any client in any matter that is "substantially related to our work for Viasat on the Acacia appeal." *Id.* at 2.



That Gibson Dunn received confidential information as part of the *Acacia* appeal is yet another, independent reason why disqualification is appropriate here. "Even when matters are not

4

substantially related, a former client may still disqualify former counsel by showing that confidential information was provided to counsel and that the confidential information is relevant to the new matter." *Adaptix, Inc.*, 2014 WL 11730482, at *7 (citing *City of El Paso*, 6 F. Supp. 2d at 624). Gibson Dunn expressly agreed to the same when Viasat engaged the firm for the *Acacia* matter. Ex. 1 at 3. Gibson Dunn received such information, which is information directly relevant to the present case. And to Viasat's knowledge, Gibson Dunn has not returned Viasast's files for the *Acacia* matter or destroyed the confidential information it received. Ex. 2 at ¶ 11.

[redacted]

---

[1] Viasat has submitted certain exhibits in redacted form to remove privileged information. Viasat is also willing to provide the Court with unredacted versions for *in camera* review as needed.

On May 23, 2022, the Court of Appeal issued its decision, affirming the jury's breach of contract verdict and damages award. *Viasat*, 2022 WL 1617118, at *35. The Court's remittitur issued on July 27, 2022. Ex. 56 at 4.

That decision did not end the *Acacia* matter. The initial case adjudicated only damages from Acacia's pre-2019 sales. A second case—filed in 2019 *before* Gibson Dunn was engaged in the *Acacia* matter—concerns damages for sales of the same products from 2019 and later. Ex. 57.[2] When Viasat engaged Gibson Dunn for the "Acacia appeal," the two cases involved identical facts and identical claims, differing only in the applicable damages period. *See* Ex. 1 at 1. That second action is still underway. On May 4, 2023, the Superior Court entered judgment against Acacia for its subsequent sales, awarding Viasat just shy of $100 million and ordering Acacia to make ongoing royalty payments. Ex. 59. Acacia filed its notice of appeal in that matter on May 31, 2023. Ex. 60. The Acacia litigation continues. Given Gibson Dunn's extensive and ongoing representation of Viasat in this matter, Viasat has been expecting that Gibson Dunn would represent the company in this second appeal as well. Ex. 2 at ¶ 12.[3]

### 2. *Acacia* Involves The Same Viasat Inventors, Similar Technology, And A License That Is Part Of Viasat's Damages Theory

When Gibson Dunn agreed to represent Viasat in *Acacia*, it agreed not to represent any other client in a substantially related matter. Ex. 1 at 2. In the Fifth Circuit, "the substantial relationship test is concerned with both a lawyer's duty of confidentiality *and* his duty of loyalty."

---

[2] A third case was filed in 2020 concerning Acacia's sale of additional products not at issue in either of the first two lawsuits. Ex. 58. That case also regards Acacia's breach of the same technology license that is relevant to Viasat's claims here. It is currently set for trial in early 2024.

[3] Even if the Court were to conclude that Viasat is Gibson Dunn's former client rather than a current client with respect to the *Acacia* matter, the result does not change. The engagement agreement, ABA Model Rules, and Texas Rules all agree that a lawyer cannot be adverse to a former client on a substantially related matter. ABA Model Rule 1.9(a); Texas Rule 1.09(c).

*Am. Airlines*, 972 F.2d at 619. Accordingly, "the subject matter need [not] be relevant in the evidentiary sense to be substantially related; instead, it need only be akin to the present action in a way reasonable persons would understand as important to the issues involved." *John Crane Prod. Sols., Inc. v. R2R & D, LLC*, No. 3:11-CV-3237-D, 2012 WL 3453696, at *2 (N.D. Tex. Aug. 14, 2012) (cleaned up). "Once it is established that the prior matters are substantially related to the present case, 'the court will *irrebuttably* presume that relevant confidential information was disclosed during the former period of representation.'" *Am. Airlines*, 972 F.2d at 614 (emphasis added).

The subject matter of *Acacia* is substantially related to this case—it concerns forward error correction technology developed by the same employees in the same office. And most critically, the same license will be at issue in both matters.

As Viasat explained in its complaint here, Bill Thesling and Mark Vanderaar founded a company called Efficient Channel Coding (ECC, for short) in Cleveland, Ohio in 1996. D.I. 38 at ¶ 32. Viasat acquired ECC in 2005, and ECC's offices there became Viasat's Cleveland office. *Id.* at ¶ 33. ECC—later Viasat Cleveland—initially focused its efforts on designing the software and hardware needed for effective satellite communication. *Id.* at ¶ 32; *see also Viasat*, 2022 WL 1617118, at *2 ("Viasat was an established company with a division that specialized in modem work, including error correction for communications products (ECC, also known as Viasat Cleveland)."). A large part of that effort was its forward error correction technology.

By 2009, the Viasat Cleveland team was applying its forward error correction expertise to applications other than satellite communications. One such application is described and claimed in the patents asserted here—forward error correction specifically designed for flash memory. Exs. 61 and 62 (provisional application for asserted patents filed on August 18, 2009). Another

7

was the forward error correction technology licensed to Acacia in November 2009 for use in fiber optics. *Viasat*, 2022 WL 1617118, at *2. As part of the Acacia development agreement, "Viasat agreed to provide one intellectual property (IP) component for Acacia's communication products, and to license another, in exchange for a fixed fee and royalties on the licensed component." *Id.* at *1.

Given that the *Acacia* technology and the technology at issue in this case stemmed from the same work in the same Viasat office, it is also no surprise that the two technologies were developed by overlapping groups of engineers. The asserted patents name Sameep Dave, Russell Fuerst, and Bill Thesling as inventors (among others), and Viasat has identified Chandrasekar Raj as another Viasat employee who has knowledge of the work that led to the asserted patents. Ex. 63 at 2. All four were deposed and testified at the *Acacia* trial (either live or by deposition). Indeed, the testimony of "Viasat's chief technology officer, Sameep Dave" and "Russell Fuerst, who was vice president and general manager of Viasat Cleveland," was prominent in the appeal. *See, e.g.*, *Viasat*, 2022 WL 1617118, at *4.

And in part due to the overlap in technology, inventors, and development, the very license litigated in *Acacia* will inform the damages Western Digital owes Viasat in this case. Viasat expects to argue (as it did in the *Acacia* matter) that the Acacia license is a valuable and important one. And Viasat's damages expert(s) is expected to analyze the Acacia license under the *Georgia-Pacific* factors to justify the reasonable royalty that Western Digital owes.[4]

To respond to those arguments, Western Digital and Gibson Dunn will presumably offer an opposing view of the Acacia license—a position that would collide with the position Gibson

---

[4] Viasat's opening expert reports in this matter are not due until October. *See* D.I. 134 at 2. Nevertheless, Viasat expects to produce the Acacia license this week in this litigation, along with other potentially relevant damages documents.

Dunn took in the *Acacia* appeal. The entirety of the *Acacia* case is about the Acacia license—the value of which will be at issue in this case. Viasat's appellate brief described "the high value of [its] proprietary technology" and "the importance of Viasat's technology to Acacia's commercial success." Ex. 64 at 23, 110. Any attack on the value of the Acacia license will likely suggest, to the contrary, that Viasat's forward error correction technology was not an innovative, groundbreaking, and valuable technology. Even if Western Digital finds other ways to distinguish the Acacia license, it will still be making arguments to diminish the Acacia license on which it provided extensive legal advice to Viasat.

A reasonable person would understand the Acacia license is important to the damages issues here. *See John Crane*, 2012 WL 3453696, at *2. That makes the *Acacia* matter—and the license that is central to that matter—substantially related to this case. Absent a waiver, Gibson Dunn thus cannot be adverse to Viasat here.

### B. Viasat Is Gibson Dunn's Current Client

Gibson Dunn's conflict is all the more troubling since Viasat is a current client of the firm with a number of other open matters. Under the ABA's Model Rules, "[a] concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client." ABA Model Rule 1.7 (a).[5] That is precisely the case here.

---

[5] Under the Texas Rules, a lawyer is prevented from concurrently representing two adverse clients only if the matters are "substantially related." *See* Texas Disciplinary Rules of Professional Conduct, Rule 1.06(b)(1). However, federal courts have found that "the narrower national standards apply" in matters before the District Court, rather than the more permissive Texas Rules. *See Hillman Grp., Inc. v. KeyMe, LLC*, 439 F. Supp. 3d 845, 851–52 (E.D. Tex. 2020); *Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 3:10-CV-276-F, 2011 WL 13201855, at *4 (N.D. Tex. Sept. 12, 2011). Even under the "substantially related" test, however, Gibson Dunn should be disqualified. *See* § II.A.

Viasat has been Gibson Dunn's client since 2017. Viasat first signed a retention agreement in October 2017 for Gibson Dunn to provide legal services in connection with a contract dispute. Ex. 65.

Viasat signed a second retention agreement in February 2020—with Gibson Dunn welcoming Viasat "as a returning client"—this time in connection with the *Acacia* litigation. Ex. 1.

Under the terms of the retention agreement that Viasat signed in February 2020, the attorney-client relationship will terminate "the earlier of (a) our termination of our representation, (b) our withdrawal from our representation of you or (c) the substantial completion of our work for you. In the event there has been no work performed by our attorneys on your behalf for a period of six consecutive months, we agree that our attorney-client relationship will have been terminated." Ex. 1 at § 6.3.

None of those things have come to pass. Gibson Dunn has never terminated representation nor withdrawn from representing Viasat. The *Acacia* litigation (for which the agreement was initially entered) has not been fully resolved. *See, e.g.*, Ex. 60. Separately, Gibson Dunn lawyers are actively involved in ongoing trade and administrative law matters on behalf of Viasat. Ex. 2 at ¶ 18. Since February 2020, there has *never* been a six-month period during which Gibson Dunn did not perform work for Viasat. *See* Exs. 7-55.

Viasat has returned to engage Gibson Dunn attorneys time and again for different matters. *See, e.g.*, Ex. 66; Ex. 2 at ¶ 18; Exs. 7-55. Gibson Dunn has not required Viasat to sign another engagement letter, and has simply continued to represent Viasat without any formal engagement. Ex. 2 at ¶ 17. *See Hillman*, 439 F. Supp. 3d at 854-55 (course of conduct establishes ongoing attorney-client relationship); *Gen. Elec.*, 2011 WL 13201855, at *6-7 (same).

The courts in *Hillman* and *General Electric* considered similar conduct—in which "the two entities contemplated an ongoing relationship that had the purpose of allowing [the client] to bring matters to [the law firm] for legal advice and consultations as needed"—to be evidence of an "ongoing and open-ended" attorney-client relationship." *Gen. Elec.*, 2011 WL 13201855, at *7; *see also Hillman*, 439 F. Supp. 3d at 855 ("Minute Key had a long-term relationship with Cooley for roughly ten years prior to the merger of Minute Key and Hillman. Mr. Pittard and Cooley represented Minute Key on a variety of matters[.]").

Gibson Dunn is Viasat's continuous and ongoing counsel—on call as Viasat's needs arise. Gibson Dunn has never sent a disengagement letter. Ex. 2 at ¶ 19; *see also Hillman*, 439 F. Supp. 3d at 857 (lack of "a disengagement letter is highly relevant"). Viasat was consulting its Gibson Dunn lawyers on trade matters the very day that it was informed of Ms. Kieckhefer's move to Gibson Dunn. Ex. 2 at ¶¶ 18, 20. Gibson Dunn has invoiced—and Viasat has paid—nearly 50 bills in that time period, including every month since September 2022. Exs. 3-55. Indeed, on June 7— the day this motion was filed—Gibson Dunn invoiced Viasat for legal services rendered in May 2023. Ex. 67. In some months, Gibson Dunn sent multiple bills covering as many as five different matters. *See* Exs. 21-25. In total, during these three years of continuous and ongoing representation, approximately 40 different Gibson Dunn lawyers have billed Viasat for their work, for which Viasat has paid Gibson Dunn over $▆ million. *See* Ex. 7-55.

Simply put, Viasat is Gibson Dunn's current client. Again, absent a waiver, Gibson Dunn cannot represent Western Digital in this case.[6]

---

[6] Viasat expects Gibson Dunn to point to advance waiver provisions in prior formal engagement letters, like for the *Acacia* matter. But this is nothing more than a distraction. Those provisions expressly do not apply to substantially related matters, like the present Western Digital matter. Moreover, there are no formal engagement letters for Gibson Dunn's extensive ongoing work for Viasat, and thus no advance waiver provisions that would apply to its current non-*Acacia* work.

### C. Gibson Dunn's Conflicts Are Imputed To The Firm As A Whole

Gibson Dunn's conflicts are not limited to the six lawyers who worked on *Acacia*, or even the approximately 40 timekeepers who have billed Viasat for their time over the last five years. Rather, the conflicts are imputed to the Gibson Dunn firm in its entirety. The Fifth Circuit long ago confirmed this commonsense approach. "[G]iven the presumed interplay among lawyers who practice together, the rule applies not only to individual attorneys but also requires disqualification of the entire firm as well as all employees thereof." *United States v. Kitchin*, 592 F.2d 900, 904 (5th Cir. 1979); *see also, e.g.*, *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994) ("[I]f one attorney in a firm has an actual conflict of interest, we impute that conflict to all the attorneys in the firm, subjecting the entire firm to disqualification.").

And the conflicts must be imputed to the firm as a whole regardless of whether this Court applies the ABA Model Rules or the Texas Rules. *See* ABA Model Rule 1.10 ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9"); Texas Rule 1.06 (f) ("If a lawyer would be prohibited by this Rule from engaging in particular conduct, no other lawyer while a member or associated with that lawyer's firm may engage in that conduct.").

Gibson Dunn's conflict is firm-wide and is imputed to all Gibson Dunn lawyers, including Ms. Kieckhefer. Gibson Dunn and Ms. Kieckhefer cannot represent Western Digital in this case unless Viasat provides informed consent. *See* ABA Model Rule 1.7; *see also* ABA Model Rules 1.7 Comment 6 ("Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated."); Texas Rule 1.06 (c) ("A lawyer may represent a client in the circumstances described in (b) if: (1) the lawyer reasonably believes the representation of each client will not be materially affected; and (2) each affected or potentially affected client consents to such representation after full

disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any."); *In re Dresser Industries*, 972 F.2d at 545 ("Unquestionably, the national standards of attorney conduct forbid a lawyer from bringing a suit against a current client without the consent of both clients.").

### D. Gibson Dunn Rejected Viasat's Suggestion Of An Ethical Wall

Viasat does not seek disqualification lightly. Viasat was first informed of Ms. Kieckhefer's move to Gibson Dunn on May 18, 2023. Ex. 2 at ¶ 20. Since that time, Viasat has had numerous discussions with Gibson Dunn to find a workable solution for all involved. Viasat's proposed solution was to impose an ethical wall: Any lawyer at Gibson Dunn as of the remittitur in the initial *Acacia* appeal in July 2022 would be unavailable to work on this matter—a date cutoff that is sensible given that those lawyers would have had access to (or possibly even discussions about) Viasat's confidential information and litigation strategy in *Acacia*. But any lawyer joining the firm after that time would be available. Ex. 2 at ¶ 21.

Gibson Dunn rejected Viasat's offer on May 26, 2023. Ex. 2 at ¶ 22. Only then did Ms. Kieckhefer alert the Court to her change of law firm. D.I. 132. Despite being entitled to disqualify the entire firm, Viasat has since reiterated its offer to accept an ethical wall that would allow Western Digital to keep Ms. Kieckhefer as counsel while adequately protecting Viasat.

Sadly, Gibson Dunn's cavalier approach has necessitated this motion. Gibson Dunn counter-proposed a wall that is no wall at all. Its proposal, as Viasat's counsel understands it, was that Gibson Dunn would generally abide by the as-of-July 2022 wall, with the exception that it can also select lawyers needed to work on the case regardless of when they joined the firm. Ex. 2 at ¶ 23. That amounts to Gibson Dunn fully staffing the team in this matter as if no firm-wide conflict even exists. And despite knowing that Viasat intended to file this motion, Gibson Dunn appears to

have moved forward with adding Gibson Dunn lawyers and support personnel of their own choosing to the matter without entering appearances. Exs. 68, 69.

## III.     Conclusion

In these circumstances, Gibson Dunn's disqualification is appropriate and warranted. Gibson Dunn represents Viasat in a substantially related dispute where the contract at issue will play a significant role in determining the appropriate damages here. And Gibson Dunn also currently represents Viasat in a variety of other matters. Even still, Viasat has been willing to consent to an ethical wall that would allow lawyers who joined Gibson Dunn after July 2022 to work on this case.

Dated: June 7, 2023                           Respectfully submitted,

/s/ *J. Scott McBride*
Melissa R. Smith, State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
melissa@gillamsmithlaw.com

J. Scott McBride (*Pro Hac Vice*)
Matthew R. Ford (*Pro Hac Vice*)
Nevin M. Gewertz (*Pro Hac Vice*)
Tulsi E. Gaonkar (*Pro Hac Vice*)
Jessica R. Bernhardt (*Pro Hac Vice*)
BARTLIT BECK LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
scott.mcbride@bartlitbeck.com
matthew.ford@bartlitbeck.com
nevin.gewertz@bartlitbeck.com
tulsi.gaonkar@bartlitbeck.com
jessica.bernhardt@bartlitbeck.com

Nosson D. Knobloch (*Pro Hac Vice*)
Meg E. Fasulo (*Pro Hac Vice*)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
nosson.knobloch@bartlitbeck.com
meg.fasulo@bartlitbeck.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on June 7, 2023, the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned case were subsequently served on all counsel of record by electronic mail.

/s/ *Melissa R. Smith*