IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT
OF TEXAS WACO DIVISION

| | |
|---|---|
| **VIASAT, INC.,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**WESTERN DIGITAL CORPORATION and WESTERN DIGITAL TECHNOLOGIES, INC.,**<br><br>**Defendants.** | Case No.: 6:21-cv-01230-ADA<br><br>JURY TRIAL DEMANDED |

## DISCOVERY DISPUTE ORDER

The Court hereby resolves the following discovery dispute submitted by email.

**ISSUE**: Viasat's Refusal to Produce Documents Related to WDT's Marking Defense

**Defendant's Position:**

Viasat alleges that certain of Kioxia's and WDT's flash memory infringe its patents. Viasat purchases flash memory (like those accused of infringement) from Kioxia, WDT, and third parties, and incorporates those products into its own commercial products. Thus, Viasat's products that incorporate flash memory products like those accused of infringement practice the Asserted Patents and should have been marked pursuant to 35 U.S.C. 287(a). WDT requested that Viasat produce information sufficient to identify which of its products incorporate flash memory, and identify the incorporated flash.

Despite that Viasat has alleged a wide variety of flash purportedly infringes, that Viasat is squarely in possession of knowledge regarding whether and which flash is incorporated in its products, and that Western Digital would not know this information *absent* Viasat's identification,

1

Viasat has objected and refused this critical discovery on the grounds of burden.

First, WDT is entitled to receive this discovery to prove up its marking defense. Given the importance of the documents and WDT's inability to know such information absent receiving it from Viasat, discovery is plainly proportionate. Viasat's reliance to *Artic Cat* and *SPEX* are misplaced. Neither prohibits discovery into Plaintiff's products. *Vaigasi v. Solow*, 2016 WL 616386 at *14 (SDNY Feb. 16, 2016).

Second, Viasat is incorrect—it is obligated to mark its products. The court in *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 906 F. Supp. 2d 399 (WDPA 2012) found that marking was required under similar facts. There, the patentee had licensed the asserted patent to licensees that incorporated third-party chips into their own products—*like Viasat does today*. The licensee failed to mark its products—*as Viasat concedes*. The patentee argued that the licensees did not need to mark because they were unaware that the chips they purchased practiced the patents-in-suit because the third-party suppliers "used 'black box' technology which had the effect of shielding its customers from learning the design and elements of the [chips]." *Id.* at 404, 409. The court rejected the patentee's argument, holding that Section 287(a) was triggered by the licensees' sale of products that incorporated the patented components, despite that the licensees did not know that the component practiced the patent. *Id.* at 411, n.7. Similarly, in another case, the court rejected the patentee's contention that marking should not be required if the patented product is a minor component in an overall product, even if doing so would be impractical. *See Lambeth Magnetic Structures, LLC v. Seagate Technology (US) Holdings, Inc.*, 2019 WL 2579968, *17 n.25 (WDPA 2019) (refusing to adopt an "exception" that there is "no requirement to mark when the patented invention is merely a minor component of a larger device").

Moreover, *Asia Vital* is not applicable because it concluded that, under a "rule of reason"

inquiry, it would be unreasonable to impose marking requirements on a third party when infringement was being actively litigated.  Here, by contrast, patentee Viasat is the one incorporating products that it claims are infringing, and the one failing to mark its own products.

**Defendant's Requested Relief:**

Order that Viasat produce documents and information sufficient to identify which of its products were sold or offered for sale in the United States that incorporate flash memory, and the dates that Viasat sold or offered for sale such products, and identify the flash memory product incorporated in each of such products.

**Plaintiff's Position:**

It is Western Digital's burden to "articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). Western Digital has refused to identify a single product that practices the patents. Instead, Western Digital is engaging in a blatant "fishing expedition"—the very thing prohibited by *Arctic Cat*. *Id.* Western Digital seeks documents pertaining to *any* flash memory in *any* Viasat products. The Court should deny Western Digital's effort to shift its initial burden onto Viasat. *See SPEX Techs. v. Apricorn, Inc*, 2020 WL 1289546, at *2 (C.D. Cal. Jan. 21, 2020) (even "disclosure of families, rather than specific products" insufficient).

Western Digital rests its request on an incorrect understanding of § 287—that accused products potentially incorporated into a Viasat product become "patented articles." That view has never been endorsed by the Federal Circuit or a court in this district. But courts have held that accused products, to say nothing of the universe of unaccused third-party products, are not "patented articles" for purposes of § 287 when the defendant disputes infringement. *Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1026 (N.D. Cal. 2019) ("In light of the then-active litigation …. it would have been unreasonable … to attempt to impose marking requirements on any [accused] products … because there was an active dispute whether those products were [patentee's] 'patented article[s].'"). Western Digital's

3

cases do not address what the term "patented article" means. *Carnegie Mellon*, 906 F. Supp. 2d at 405 (predating *Arctic Cat*; defendant previously conceded infringement, 890 F. Supp. 2d 602, 610); *Lambeth*, 2019 WL 2579968 at *15 n.22 ("the parties do not dispute that [licensees] sold unmarked products practicing the [asserted] patent).

Ultimately, Western Digital tries to evade *Arctic Cat* by claiming this discovery is "plainly proportionate." It is not. Western Digital's unfounded request is immensely burdensome. Viasat does not keep records of flash-memory containing products it has purchased and then incorporated into other products. Western Digital's request would force Viasat to search through parts lists by component manufacturer (Western Digital refuses to name manufacturers it's interested in), attempt to identify which ones contain flash controllers based on shorthand descriptions, correlate those components to specific Viasat programs, and then speak with engineers and business personnel to determine whether those programs generate any Viasat products. Viasat would be undertaking that effort *before* Western Digital articulates whether any flash controllers practice the asserted patents. Both *Arctic Cat* and Rule 26 rebuke such a burdensome task.

Nevertheless, Viasat offered a compromise: Viasat would search and provide a list of flash products Viasat purchases *from Western Digital*—not the entire universe of flash products Viasat purchases (which may not end up in Viasat products). Then, Viasat is willing to correlate purchased flash controllers to Viasat products—despite the burden of doing so—once Western Digital identifies which flash controllers it believes practices the asserted patents. Western Digital rejected Viasat's offer.

**Plaintiff's Requested Relief:**

Deny Western Digital's requested relief in its entirety. In the alternative, order that Viasat need only identify the flash products it purchases from Western Digital. To the extent that the Court is inclined to rule as a matter of law on the meaning of the term "patented article," Viasat respectfully requests full summary judgment briefing.

**Order:**

The Court ORDERS Viasat to produce documents and information sufficient to identify which of its products were sold or offered for sale in the United States that incorporate flash memory, and the dates that Viasat sold or offered for sale such products, and identify the flash memory product incorporated in each of such products.

**SIGNED** this 19th day of September, 2023.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE